PeaRson, J.
 

 It is clear that this was “ a bet” upon the-result of the Presidential election; and, the bet being lost, by the admission of the parties, the bond sued on was exe-. cuted' to secure the balance remaining unpaid. It was not proven that the parties, or either of them, were voters, and' no presumption of that fact can be made to.aid the defence. We are, therefore, to take it, that neither were voters; and' the question is presented, can a bond, given to secure money-lost upon a wager on the result of a Presidential election, then pending, made by persons who are not voters, be re-, covered ?
 

 It is settled that the action cannot be maintained if either-of the parties is a voter.
 
 Allen
 
 v
 
 Hearne,
 
 1 T.R. 56, Burns v
 
 Riker,
 
 4 Johnson, 426. We think it cannot be maintained, although neither of the parties is a voter, and put our-opinion on the broad ground, that the wager is against pub-, lie policy; and the Courts ought not to countenance it, by aiding in the collection of a bond given to secure the mo-, ney won..
 

 
 *346
 
 Ours, both Federal and State, are representative, republican governments, and rest upon elections by the people, as “ the corner stone.” Everything, not merely the proper action, but the very existence, of our institutions, depends on the free and unbiased exercise of the elective franchise; and it is manifest, that whatever has a tendency, in any way, unduly to influence elections, is against public policy. This position we assume, as self-evident. It seems equally clear, that the practice of betting on elections has a direct tendency to cause undue influence. For, by the wager, the parties' acquire a pecuniary interest in the election, altogether foreign, and at war with its true purpose and design, which leads them into temptation, more or less strong, according to the amount of the wager, to exert every and any means, by which to effect the result, and to strengthen one side and weaken the other. One, who has a wager depending, follows but the instinct of interest, when he resorts to the perversion of facts, the circulation of falsehood, treating and bribing, for the purpose of gaining votes. The evil is not confined to himself. His relations and friends become excited and stimulated to exercise, not for the
 
 good of the country,
 
 but for the pecuniary interest growing out of the wager. Such a state of things is against the public good.
 

 Putting our decision on this broad ground, .the fact that the parties to the wager are not voters, has no bearing on the question; because the evil effects of the practice of betting on elections, pointed out above, do not at all depend on that circumstance. One who is not a voter, may be tempted as strongly as one who is a voter, to pervert facts, circulate falsehoods, treat and bribe, and the infection extends as readily to his relatives and his friends.
 

 While concurring in the correctness of the decisions in the two cases above cited, we must be allowed to say, that the ground upon which they are put is very narrow, to wit: that, as both, or one, of the parties were voters, the wager
 
 *347
 
 was illegal, because it created a pecuniary interest, calculated to swerve him from his duty; for, although he may have bet upon the candidate for whom, at the time, he intended to vote, yet, perchance, but for this pecuniary interest, he would have changed his vote; whereas, after the bet, he was not open to conviction, and did not “ stand indifferent.”
 

 The probability, that a single vote might have been changed, but for the fact that the door to conviction was shut by the wager, is certainly very narrow ground. It presented itself, however, in those two cases, and the Judges chose to rest on it, without deciding how it would be, if neither of the parties had been voters. No case is found, in which the question presented to us is decided; and we are at liberty to put our decision upon the broad ground, which we have assumed, as the result of principle and the “ reason of the thing.” This ground is so broad as to make it immaterial whether the parties are voters or not.
 

 ' The case of
 
 Bunn
 
 v
 
 Riker
 
 aids our conclusion. There, the parties were both voters, but one had cast his vote; so, the reasoning in
 
 Allen
 
 v
 
 Hearne,
 
 where the bet was laid before the poll was opened, did not apply to him. The other was on the day the bet was made, fifty miles from his residence, where alone he was entitled to vote, and the polls would be closed at sunset on that day The difference, in the opinion of the Judges, turned upon the possibility of his being able, in 1807, (before the age of railroads,) to fide the fifty miles in time to cast his vote; and to carry out the reasoning upon the further possibility, that, in thus riding, he might have concluded to change his vote, but for the pecuniary interest created by the wager.
 

 The broad ground, which we assume, is recognised' and acted upon, in
 
 Atherton
 
 v
 
 Beard, 2
 
 T. R. 610, where the Court refuse to support an’ action for a wager, as to the future amount of a branch of the
 
 public
 
 revenue, and Buller, Judge, says, Lord Mansfield was of opinion, that
 
 *348
 
 any wager as to a
 
 public event
 
 would be void. So in
 
 Gilbert
 
 v
 
 Sikes,
 
 16 East, where it was agreed to pay certain sums per day, as long as Buonaparte lived: this was held to be a wager, and illegal, as. tending to create a private pecuniary interest in a matter of public concern.
 

 Per Curiam. Judgment reversed,, and
 
 venire de novo
 
 awarded.