No. 60.—JOHN D. WINN, plaintiff in error, *vs.* THE CITY
        COUNCIL OF MACON, defendant in error.

By the 10th section of the Act of 1833, the city of Macon was authorized to
    borrow $200,000, and to pledge the public funds and property, and the com-
    mon, thereof, for the redemption of the debt; and also to purchase any real or
    personal estate for the use and benefit of the city.  In September. 1838, the
    city subscribed for five hundred shares of the stock of the Monroe Railroad
    and Banking Company, and in 1838, the Legislature passed another act, in
    which, after referring to the fact of the previous loan which had been autho-
    rized, and that the same had already been borrowed and invested in stocks
    for the purposes of internal improvement ; they gave power to contract ano-
    ther loan of like sum, and to pledge the Town commons and public property
    of the city for the payment of the same.
*Held,* that by these acts, the subscription to the stock of the Monroe Railroad
    and Banking Company, was, by necessary. implication, recognized and ratified

Debt on statute, from Bibb Superior Court.    Tried before
Judge POWERS, May Term, 1856.

This was an action of debt brought by John D. Winn,
plaintiff, against the Mayor and Council of the City of Ma-
con, defendant, for the recovery of certain bills of the Mon-
roe Railroad and Banking Company, and of which compa-
ny the defendant was a stockholder, and, as such, liable, as
claimed by plaintiff, for the payment and ultimate redemp-
tion of its share or proportion of said bank bills, under the
charter of said company.

The case came up on the following facts agreed upon by counsel representing plaintiff and defendant, viz:

That plaintiff read his declaration and the various extracts from the minutes of the City Council of Macon, from 1833, to 1838 inclusive, and hereto attached, marked 1, 2, 3, 4, 5, and read in connection therewith the charter of the city of Macon as amended up to the year 1839 ; and read also the two acts of the Legislature, one passed 24th December, 1833, and the other 29th December, 1838. It being also agreed that said city charter may be referred to as law, without being copied herewith; plaintiff also read a certified copy of a memorial to the Legislature which accompanied the bill which passed into said law of 1838, and hereto annexed, marked A.

It is admitted that the circulation of the bills of the Monroe Railroad and Banking Company at the time of its failure was, $193,220. That the entire number of shares of said company's stock was and is five thousand seven hundred and fifteen. That defendant was and is a subscriber for, and owner of 500 of said shares, and that plaintiff's bills, sued on, amount to three thousand four hundred and seventy-five dollars.

Upon the aforesaid state of facts the parties make the following points, upon which the opinion of the Court is considered as given in the shape of instructions to the jury:

1st. Plaintiff contends that the subscribing for said stock was a corporate function and the charter of the city fully authorized it.

2d. If not a corporate function, then the Court is asked to charge that the Legislature especially by the said two Acts of 1833 and 1838, impliedly ratified a prior subscription for stock in a railroad and permitted this subscription.

3d. The Court will charge the jury, that if they believe from the evidence that the Legislature, when it passed the Act of 1838, authorizing the further loan $200,000, knew that the city of Macon had engaged in internal improve-

Winn vs. The City Council of Macon.

ments of this kind, and actually contemplated subscriptions for this stock, and that said loan was in part authorized for this purpose, then it was a legislative sanction, and therefore defendant is bound for the subscription.

4th. That in this case, the legislative acts relied on as permitting this subscription, and the making of loans to pay for it, steered clear of any constitutional objection as to delegating power to tax the citizens of the town; said acts only authorizing the pledge of the corporate property or public domain of the city.

The defendant requests the Court to charge: That,

1st. the charter of the city did not authorize the said subscription.

2d. There was and is no legislative permission or sanction of said subscription for said stock.

3d. That any such legislative sanction or permission would be unconstitutional and void.

### Charge of Judge Powers.

The opinion of the Court is adverse to all the positions assumed in the several requests of plaintiff's counsel, as being substantially erroneous *under the facts* and pleadings in this case. This Court is also of the opinion, that the several grounds assumed in the requests of defendant's counsel, contain sound legal principles as applied to the facts and pleadings in this case, and so rule them as the law of the case. It being the opinion of this Court that the Legislature has not the power to authorize a *mere municipal corporation* to become owners or speculators in stocks, either of railroads or other stocks, or to engage in and become competitors with her own citizens or others, in any of the business affairs or avocations of life, the same being foreign to the ends and objects of the very existence of a municipal corporation and in conflict with duties as at first established.

To which rulings and charge, the plaintiff excepts, and assigns error.

RUTHERFORD, for plaintiff in error.

WHITTLE & NESBITS, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

As counsel for the corporation yield the right to the Legislature to delegate the power to the city of Macon to subscribe for stock in the road, the only question submitted for our decision is, whether the grant has been conferred in this case, either directly or by necessary implication ?

By the tenth section of the Act of 1833, *Pamphlet* 112, it is provided, " That the Mayor and Council of the City of Macon, or a majority of them, shall have power and authority to borrow money and contract loans, not to exceed $200,000, for the use of the city, both from bodies corporate and from individuals, either residing in or out of the State; and to pledge the funds or property of the corporation of the City of Macon and the commons thereof, for the redemption of such loan or loans ; and also, shall have power *to purchase any real or personal estate for the use and benefit of the corporation ;* and sell and dispose of all or any part of the property, domain, land, or lots, or any personal property to said corporation belonging or appertaining, by lease for years, or fee simple, as to the said Mayor and Council, or a majority of them, shall seem right and proper."

Passing by the grant of power in this Act, which is exceedingly broad, and which seems to point to some extraordinary investment of city capital in works of internal improvement, or some other enterprize ; and disregarding the *aliunde* testimony explanatory of this act, we come to the Act of 1838. It purports to be " An Act to amend the several laws for the incorporation of the city Macon; and to au-

thorize the Mayor and Council to contract for the loan of money," &c.

Next comes the preamble which recites that "whereas an Act has been heretofore passed authorizing the Mayor and Council of the city of Macon to contract for the loan of a sum or sums of money, not exceeding $200,000 : and whereas, that sum has been already borrowed *and vested in stocks for the purposes of internal improvement.*" In order therefore, to enable said corporation to raise further sums, it is enacted, "that the city authorities have power to contract a further loan of $200,000 over and above the amount already borrowed; and that the Town commons and public property of the city be pledged for the payment of the same." *Pamphlet* 66. With a full knowledge on the part of the Legislature that the previous loan of $200,000 authorized by the Act of 1833, had been vested by the city "in stocks for the purposes of internal improvement," instead of rebuking the corporation for a misapplication of these funds, they indirectly approve of the measure; and confer upon the city authorities power to borrow as much more for the same purpose. Now when it it is recollected that the five hundred shares of the stock of the Monroe Railroad and Banking Company, had been subscribed for in the month of September, previous to the passage of this act, as the minutes of the Board show, can it be doubted, that it both sanctions and ratifies that transaction, by necessary and irresistible implication? And moreover, the Act of 1838, serves as a key to explain the objects and intent of the loan contracted for, under the prior Act of 1833. The money authorized to be raised by that act, to aid in the construction of the roads below and above the city, proving inadequate for that purpose, a further application is made to the Legislature, and power given to contract another loan.

This is not a power to levy a tax or to burden the inhabitants of the city of Macon, with a personal liability. It is only the Town commons and the public property that is

Shaw vs. The City Council of Macon.

pledged for the payment of the loan. Whether it was wise in the corporation to take stock in this road, it is not permitted to this Court to enquire. It was a question exclusively for the determination of the, Mayor and Council under the advice of the community whom they represented, and who by a popular vote seem to have decided in favor of the subscription. The results may not have equalled the expectations of the more sanguine and hopeful. When one surveys however, the princely palaces which crown her hills; her colleges and churches, her hotels, depots, ware-houses and stores; her founderies and factories, rivalling in extent and costliness any in the union, the expansion of her commerce, the wealth of her population, individually and collectively, surrounded by all the comforts and enjoyments which make life desirable; I see no reason for regret that Macon, the beautiful central city of the State should have contributed her part to those improvements which have been the medium through which this prosperity has been attained; and although her involvement on this account were a hundred fold greater than it is, I am persuaded that the high-souled counsel who so ably represented her rights and interest in this discussion, would be the last man living, to recommend that repudiation was a proper remedy for a debt contracted for such a purpose as this was.

Judgment reversed.