I. The County Court of McDowell County was abolished on the 15th day of July, 1868, and its powers and duties were thereupon devolved upon the County Commissioners.
II. That a portion of the paper writings, (which are herein for convenience, styled bonus,) were signed by J. S. Brown, who was the last Chairman of the County Court, before its abolition, in vacation and without any order to that effect from the County Court, to the amount of $12,500, and the remainder, to wit: to the amount of $37,500, were signed by him after the abolition of the County Court; and all of them, amounting to $50,000, were countersigned by the Clerk, A. M. Finley, and the seal of the Court impressed upon them after the abolition thereof; and all of the paper writings, (herein for convenience styled coupons,) now sued on, except one, were attached to the latter class of bonds and signed by said Finley, when he countersigned the latter class of bonds.
III. That no certificate of stock was ever issued to the county of McDowell, or to any one on its behalf, but said county was credited on the books of the Western North Carolina Railroad (209) Company with $50,000 worth of stock; and was treated and recognized in all respects by the Company as a stock holder.
IV. That at the annual meetings of the stockholders, held in the years of 1869 and 1870, the said county was represented as the owner of said stock, by one A. M. Erwin, duly authorized by said Board of Commissioners, as its agent or proxy, and that during the years 1870 *Page 178 
and 1871, said county was represented in the annual meetings of said stockholders, by one A. G. Halyburton, the duly authorized agent or proxy, and that at each of said meetings, the said county, through its said proxies or agents, exercised all of the rights of a stockholder in said Company.
V. That the Board of Commissioners, holding office from 1868 to 1870, refused to levy any tax to meet the interest on said bonds. That the Board of Commissioners holding office from 1870 to 1872, did levy a tax on the 10th day of February, 1871, of 90 cents on the 100 dollars valuation; and again on the 20th of April, 1872, another tax. That the present Board of Commissioners, the defendants, have laid no tax, appointed no proxy and have always refused to recognize the validity of the said bonds. That the Board, secondly above named, at the time of the levying of the taxes as above stated, were not aware of the manner in which the bonds were signed; (except such constructive notice as the law may imply from the records of the County Court, as set forth in the answer), and supposed them to be regular and binding, until the facts were ascertained as above stated, and they were advised by counsel to the contrary. Since then, they laid no tax, paid no coupons, nor have they or the county been represented in the stockholders' meetings of said Company.
VI. That the said Board, secondly above named, to wit: from September, 1870, to 1872, with the proceeds of the tax paid by them, and before the facts were ascertained and they were advised as (210) above stated, paid a large number of the interest coupons attached to said bonds, to which the coupons upon which this action is brought, were also attached.
VII. The act of the General Assembly, ratified 1st day of March, 1870, chap. 65, Laws of 1869-'70, purporting to cure all irregularities in the issuing of said bonds, is to be treated as sufficiently pleaded. (The provisions of said act are fully stated in the opinion of the Chief Justice.)
VIII. The plaintiff is a bona fide purchaser without notice of the alleged defect.
IX. The action of the County Court touching the matter, as stated in the answer, is correct, and it is to be treated as part of the case agreed. (Also fully set out in the opinion of the Court.)
X. That a demand for payment and for the levy of taxes has been made, and no part of the coupons sued on has been paid.
XI. That the appointment of proxies, the levy of taxes, the payment of coupons and passage of the act of Assembly, all as aforesaid, *Page 179 
occurred after said bonds were signed and before the commencement of this action.
XII. That the said bonds purport on their face to be issued pursuant to an act of the General Assembly, entitled "An Act to amend the charter of the Western North Carolina Railroad Company;" and they likewise purport on their face to be payable to the "Western North Carolina Railroad Company, or the holder."
XIII. That all of the coupons sued on were attached to, and detached from the latter class of bonds, ($37,500,) except one.
If upon the foregoing case agreed, the Court shall be of opinion with the plaintiff, judgment for a peremptory writ of mandamus shall be rendered; if his Honor be of opinion with the defendant, a judgment of non-suit.
Upon consideration, the Court being of opinion that the plaintiff was entitled to relief demanded, gave judgment accordingly, from which judgment defendants appealed. (211)
The case may be analyzed thus:
First. Were the paper writings (styled for convenience bonds) void in their inception?
Second. If yes, has the circumstance of the plaintiff being an innocent purchaser any effect to validate them?
Third. (1.) Could they be ratified? (2.) Were they ratified?
I. Were the bonds void in their inception?
The defence is substantially non est factum. The power of the county to issue "aid bonds" is not involved, but the power of those professing to act as its agents, and the case turns upon the idea of a non-execution of the power as distinguished from ultra vires.
(1.) As to the bonds signed by Brown, before the abolition of the County Courts, it may be observed, so as to put the case squarely on the validity of the latter class, i. e., the $37,500 signed by Brown and countersigned by Finley after the abolition of the County Courts, that
a. There is no provision in the Statute (Acts of 1856-'7, ch. 68, sec. 4) touching the person by whom, and the manner in which any bonds were to be issued, but the same was left to the after regulation of the County Court.
b. The County Court at ________________ Term, ________________, expressly reserved the decision of these matters for its further consideration, and never after resumed their consideration. *Page 180 
c. Brown, the last Chairman, then, in the absence of any order to that effect, and in vacation, signed a portion, $12,500.
d. Finely, the last Clerk, did not countersign any of them, nor is the seal of the County Court impressed on any of them until after the abolition of the County Courts.
e. The seal of the County Court had then, by virtue of the provisions of C. C. P., sec. 142, and acts of special session of 1868, chap, (212) 20, sec. 35, p. 31, been thrown "amongst the rubbish of the temple."
f. In the absence of an order to that effect the Chairman and Clerk were no more authorized to sign bonds than any other person, and there was no law imposing such duty on them, [the observations stated under the heads of e and f are applicable to both classes of bonds.]
(2.) As to the second class, we have this legal proposition, namely: Are paper writings signed, by persons who were the last Chairman and Clerk, after the abolition of the County Courts, with the seal of the said Court surreptitiously obtained and impressed on them, after such abolition, all being done without any order made by the County Court, in that behalf, and in the teeth of an order reserving the matter of the issuing, c., void?
The lack of power in the persons professing to act for the county, is, we submit, a complete analogy to the lack of power in the county itself. For equally, in each case, the bond is not the act and deed of the county.
The principal case is without a parallel within our researches, but the proposition that such bonds are void in cases where the power in the county is wanting is firmly settled.
By this Court: Weith v. Wilmington, 68 N.C. 24. Also by: Marsh v.Fulton County, 10 Wall, 676; Clark v. Des Moines, 19 Iowa 209; Gould v.Town of Sterling, 23 N.Y. 456; Treadwell v. Commissioners, 11 Ohio (N.S.) 183; Lewis v. Commissioners, 2 and 2 Nos. Central Law Journal; RoyalBritish Bank v. Turquand, 5 Ell. and Black, 248; S.C. on Error, 6 Ell. and Black, 331.
And text books of acknowledged merit lay down the same doctrine. Cooley Const. Lim., p. 215; Dillon on Municipal Corp., sec. 426, p. 413.
The latter author thus puts it: "The Courts all agree that such a corporation may successfully defend against the bonds in (213) whosoever hands they may be, if its officers or agents who assumed to issue them [bonds] had no power to do so. Sec. 426.
Again: "The true view it is respectfully submitted is this: Officers are the agents of the corporate body, and the ordinary rules and *Page 181 
principles of the law of agency are applicable to their acts. Their unauthorized acts are not binding on the corporation."
In Lynde v. The County, 16, Wall, 16, the point made was that the officer designated to issue bonds had temporarily ceased to be such officer in consequence of absence from the State, pursuant to a statute, but while sustaining the bonds in that case, the reasoning shows clearly that had the officer became functus officio the Court would have decided otherwise.
The very point is stated in a recent work. 2 Coler. Mun. Bonds, 134, 136, 164.
In the absence of any exact parallel to our case it may not be inappropriate to recur to some analogies arising out of the doctrine of agency.
Contracts of agency may be divided as follows:
1. Contracts by agents of private parties.
2. Contracts by public agents.
Contracts of either class are void on three grounds:
1a. By reason of a lack of power.
2b. By reason of an excess in its execution.
3c. By reason of a cesser of the power.
We will submit our views on each.
First. As to contracts by agents of private parties.
1a. Lack of power: 1 A signs a note in the name of B, without his authority, or where a Justice signs the name of a "stayor." Rickman v.Williams, 32 N.C. 126.
2b. Excess: A having a parol authority to bind, attempts to do so by deed, directly as in Delius v. Cawthorn, 15 N.C. 90 or indirectly as in McKee v. Hicks, 14 N.C. 379; Davenport v. Sleight, 19 N.C. 381;Graham v. Holt, 25 N.C. 300; or if a partner executes the note of the firm to secure his individual debt. Long v. Carter, 25 N.C. 238; or a note of the firm under seal, in the absence of his (214) co-partner, and with only a parol power. Sellers v. Streater,50 N.C. 261; Fisher v. Pender, 52 N.C. 483.
3c. Cesser of power: Ex. gr. that of an attorney by War. Blackwell v.Willard, 65 N.C. 555.
Second. Contracts by public agents.
1. Lack of power. Ex. gr. to issue grants of land not the subject of entry; University v. Taylor, Taylor 114 (67); Strother v. Cathey,5 N.C. 162; Stanmire v. Powell, 35 N.C. 312; McCormick v.Monroe, 46 N.C. 13, or for lands entered by the entry-taker; Terrell v.Mauney, 6 N.C. 375; or to accept bills. The Floyd Acceptances, 7 Wallace 666.. *Page 182 
2b. Excess: Ex. gr, a contract by a school committee to employ a teacher for a period extending beyond their term of office. Taylor v. SchoolCommittee, 50 N.C. 98.
3c. Cesser of power: Ex. gr. sale by commissioners after the time designated. Cooper v. Gibson, 51 N.C. 512. Special deputy sheriff.Patterson v. Britt, 33 N.C. 383.
Void acts of officers cited as analogies under the last head, interalia.
Commissioners appointed to perform a public act, after performance arefuncti officio. State v. King, 20 N.C. 521.
The deputation of a special constable expires upon the return of the warrant, and does not authorize an arrest for commitment. State v. Dean,48 N.C. 393.
A levy made under a Justice's execution more than three months after its date is void. McEachin v. McFarland, 12 N.C. 444.
An outgoing sheriff who has levied a fi. fa. on land, can not sell under a ven. expo., after his term has expired. Tarkinton v. Alexander,20 N.C. 87.
It is thus seen that the contracts and other acts of persons who had been officers, but had become functi officio are void.
II. Reply of innocent purchaser.
Even in the hands of a bona fide holder for value before (215) dishonor negotiable paper is not protected against those defences, which go to the essence of the paper, and either by common law or statute, annul and avoid the contract, or which interfere with and prevent his acquiring a legal title to the paper. 1 Parsons on Bills, 275-276; ex gr when the name of the maker is forged, or when the contract is tainted with usury. Henderson v. Shannon, 12 N.C. 147; or gaming. Turner v. Peacock, 13 N.C. 303; Bettis v. Reynolds, 34 N.C. 344; or the note of an infant, lunatic, a married woman; or even when a single bill was made payable to A. to obtain a loan, who refused to accept and loan, but thereafter endorsed it without recourse to B. who made the loan. Repass v. Latham, 44 N.C. 138; Southerland v. Whitaker,50 N.C. 5; so as to a bill taken up by the drawer after protest.Price v. Sharp, 24 N.C. 417. And the same principle is applicable to several of the cases cited in paragraph I, and others might be cited.
We have, however, cited enough to establish that the protection claimed by the plaintiff as an "innocent purchaser," can not be based upon the idea of loss to him, as that result, when correctly weighed, is found to be as applicable to the class of cases where he is not protected, as to those where he is.
Such an argument, when cross-examined, comes to this — that it ishard and against conscience to hold that one who has paid his money *Page 183 
without knowledge of the want of power in the party executing (dressed up in the alluring phraseology of "innocent purchasers for value,") should lose it.
To this specious argument we reply:
1. Hard cases are the quick-sands of the law.
2. Mere rights in conscience are not administered in Courts; equity as well as law is a science based upon well-settled principles, adopted with reference to the wants, convenience and habits of a free and enlightened people.
3. Res adjudicata. Take the case of an usurious, or gaming note, or a forged note. A purchases without notice — he must lose his money, yet, his right in conscience to re-imbursement is as just in these cases (and in the first two far more) than in ours. Nay, (216) it would be harder in our case than the first two illustrations as the county of McDowell derived no benefit from the sale of the bonds.
Then we must seek the reason for the shield thrown around an "innocent purchaser" in some other principle than one so legally naked as a bare loss, for when by covin or otherwise one of two equally innocent parties is to suffer, the law stands still — in equali jure melior est conditiopossidentis et defendentis, an off-shoot from one of far wider scope.
Medio tutissimus ibis.
Then it may be asked under what circumstances and on what principles are "innocent purchasers" protected?
We reply:
1. The contract must be executed by persons possessed with a power to make such contracts.
2. The purchase must be for value, before maturity, and without knowledge or the means of information as to the non-performance of conditions precedent, or irregularities.
3. That corporate bonds (when conditions precedent have not been complied with) should purport on their face to have been issued pursuant to the law of their being. These principles are corollaries from that ethical maxim which permeates every department of our science, namely, that no one shall take advantage of his own wrong. An analogous principle is laid down in Harshow v. Taylor, 48 N.C. 513.
From an inattention to the true foundation of the principle protecting an innocent purchaser — a doctrine eminently just when properly applied — some Courts are taking wide strides in the labyrinths of casuistical law, and the mazes of a legoethical jargon till legal —
"Wilds immeasurably spread
"Seem lengthening as we go." *Page 184 
Too much credit cannot be given to that thoroughbred lawyer, JudgeDillon, for his efforts "to put on the brakes," by stating in his lucid style the true characteristics criteria. Dillon, chap. XIX, (217) passim, especially sec. 419.
It was the duty of the buyer, as the power of the county was not general but special, to examine the records and look to the authority of the pretended officers. Marsh v. Fulton County, supra.
If he had done so he would have ascertained that the County Court had not only never authorized any one to issue the bonds, but had expressly reserved the consideration of matters connected therewith. The minutes were open to inspection.
Again, the plaintiff was not merely put on inquiry, but should have at once pursued this inquiry, by the false citation of the act under which the authority to issue the bonds was claimed, more especially as the bonds recite by its title another and distinct act, which does not in any manner bear upon the subject.
III. Ratification.
(1.) As to the act of Assembly. Acts of 1869-'70, chap. 65. p. 114.
a. We submit that under the maxim ut res magis valeat, c., which is daily becoming more useful and needed in its application to statutes — the true interpretation of the act is that it only applies to "irregularities."
b. That if the bonds were void when issued, the act cannot have the force and effect of a ratification. Marsh v. Fulton County, supra.
c. If we are in error as to both grounds, then we submit that if its purview be to attempt to declare a contract valid which is void, it is tantamount to an usurpation of the judicial function, and thus violates that provision of the Constitution which ordains that "the legislative, executive and supreme judicial powers of government ought to be forever kept separate and distinct from each other."
 Acts of a similar nature were declared unconstitutional. Hoke v. Henderson, 15 N.C. 1; Robeson v. Barfield, 6 N.C. 390.
(218) (2.) As to the acts of the Commissioners, en pais, we submit:
a. That the doctrine of ratification implies proprio vigore, a voidable as contradistinguished from a void act, and this distinction and the principles grounded on it pervade the analogies; thus, (1.) a voidable writ justifies the sheriff, but not one that is void; (2.) a confirmation enures to make a voidable estate sure and unavoidable; (3.) in amendments there must always be something to "amend by," c.
b. That to give the acts en pais such force and effect, it must be *Page 185 
shown that they were done (being without consideration) sedately and with a full knowledge on the part of the Commissioners, of all the facts and of their legal effect. Brady v. Mayor, c., 20 N.Y. 312 et 319. Cumberland,c., v. Sherman, 20 Md. 117. Dillon, sec. 447 and note 3 and cases cited.
c. The appointee of a power can never ratify.
d. The so-called ratifying act, unless procured by the county, is resinter alios, and there is no evidence that it was so procured.
Folk, also for defendant, submitted the following brief:
The authority necessary to enable a county to subscribe to stock in a railroad, and issue its securities, is not contained in the general words in which the power of local government is given. Therefore, the first requisite to the validity of such subscription or securities is a special legislative power to make the subscription and issue the securities. Cooley p. 215. This power must be carefully followed by the county in all essential and substantial particulars, or the subscription or securities will be void. (Ibid 215.) This results from the nature of those powers confided by the sovereign to the Legislature, and which cannot be delegated except in the instances sanctioned by the immemorial usage. When granted in accordance with this usage they are not contracts, but authorities, which may be revoked, and are construed very strictly. This rule of construction may seem technical, but it is necessary and adopted to enable the Courts to keep local organizations within the just scope of their chapters, and (219) prevents them from encroaching on the powers of the Legislature. By this act the power is given to the County Court to appoint some person to issue the bonds. No such appointment has been made and therefore the bonds issued are void. In answer to this, it is insisted:
1st. The bonds purport, on their face, to be issued by the county pursuant to act of Assembly, and are payable to the W. N.C. R. R. Co. This objection reverses the order of evidence. The rule is that the declarations of a person are not admissible to prove his agency; it must be established by evidence aliunde, before the declarations are admissible for any purpose. (Floyd acceptance cases supra.) So these bonds must be established as the bonds of the county of McDowell, before any declaration which they contain can be received as evidence against the county.
Secondly. The Board of Commissioners appointed proxies, who represented the county in the meetings of the stickholders, and taxes were raised and coupons paid.
1st. This action was ultra vires and void.
2d. The Court cannot give to these facts the force of an estoppel. *Page 186 
3d. The objection cannot avail for the further reason that there is a broad distinction between the contracts of individuals and corporations having a general power to issue securities, and counties, who can only do so in pursuance of a special legislative power. To the latter the doctrine of ratification does not apply, for it would enable the county to defeat the legislative will by disregarding restrictions, and then doing acts which would ratify and confirm their original wrongful acts.
4th. The private act of 1870 is void, such acts do not bind third persons. Drake v. Drake, 15 N.C.; Cooley, p. 115.
5th. H is a bona fide holder without notice.
1. The act is a public law, the power is given to a court of record whose doings are matters of record, therefore all persons have (220) constructive notice. Cooley, p. 216, and cases cited.
2. The objection to the validity of these writings goes to their existence as securities, therefore an intermediate holder cannot be in better condition than the payee. So the question still remains one ofpower, which not being authorized by the act, the writings are void.
1st. The general powers of a county do not authorize the levying of taxes for anything but county purposes.
2d. The power of a county to subscribe to the building of a railroad must be conferred by the Legislature.
3d. The power thus conferred must be exercised strictly in conformity with the provisions of the act conferring the power. The paper writings claimed to be bonds purport to be issued by virtue of an act of the Legislature, and hence it is incumbent on the holders to show that they were issued in accordance with its provisions, unless they are protected by being bona fide purchasers for valuable consideration without notice, which is not the case here. 1st. As the act authorizing their issue was public in its nature, and which gave to the magistrates the power to be exercised in a certain way. (Acts of Legislature 1854'55, chap. — , sec. — ,) was in itself therefore notice to the world.2d. The proceedings of the magistrates had to be exercised as a Court which is a Court of Record, and is notice as much as is a docketed judgment in any county. As all of the authorities on these points are before the Court, we will not take the time to recite them.
4th. Another question arising in this case, is the power of an agent to bind his principal. The fact of an agency admits the fact of an authorization, so that we must look for the power granted.
The Chairman of the County Court had no authority beyond those *Page 187 
expressly granted to him, and by his act could no more bind a county topay a debt than a mere stranger, and hence had no right or power to assume that he would issue the promises of the county (221) to pay off the debt of the county incurred by the subscription of fifty thousand dollars to the stock of the Western North Carolina Railroad Company, unless it was expressly delegated to him by the County Court, "a majority of the justices being present." And in fact, it does not appear that these bonds did pay the said subscription, as it is expressly stated in the case that "no certificate of stock ever issued to the county of McDowell," for which they purport to be issued, and hence they must be void for want of a consideration.
If, then, we are correct in our opinion, that it required an express and special power to authorize the Chairman to issue the bonds and bind the county, and this authority is not shown, it follows clearly that these are not the bonds of the county. These views all admit that the bonds were issued while the Chairman was Chairman, but the facts in this case show that at the time he signed the bonds, at least $37,500 of them, he wasfunctus officio, and so it is apparent that any authority he ever had was gone. This point, we think, too clear to comment further upon.
The last point relied upon by the holders of the bonds, is the act of the Legislature, Laws of North Carolina, 1869,-'70, claimed by them to ratify and confirm, and make valid the bonds, and this turns upon the question of the power of the Legislature.
The Legislature has power to make laws, but it has no power to say that a certain act done shall not be valid; that is the province of the judicial department.
To this it may be replied, that the Legislature has often exercised this power, which has been confirmed by the Supreme Court; as, for example, in the cases of official bonds given before the Special County Courts of three magistrates, instead of twelve.
The question in those cases was, whether the bonds had been accepted by the State, and it is clear that as the Special Court was professing to act as the agent of the State, the State (i. e. the (222) Legislature) had the power to ratify and confirm their action, and say we will accept the bonds. "Omnis ratihabitio retro trahitur,et mandato priori oequiparatur." But in this case, the Legislature is attempting to ratify the act of one party, which binds another; one in which the State is not interested. The cases would be nearer parallel if the ratification had been by the county, or even if it had appeared (as it is a conceded point that all legislative power is in the Legislature and cannot be delegated,) that the county had applied to the *Page 188 
Legislature for the act ratifying and confirming; but even then it could amount to nothing. The confirmation of an act that is void, is only to say it is void, and herein is the distinction between the void and merely voidable; to confirm a void act is to say it is void; to confirm an act voidable is to say the irregularities shall not operate to make it void. And in this case, if it had turned upon the mere irregularities in the issue of the bonds, and it had appeared that the county of McDowell had applied to the Legislature to cure the irregularities by an act of ratification, it might have been binding, but as it is only a ratification of an act that is absolutely void, it necessarily settles the case for the county by saying it is void. This suit is upon the coupons attached to the bonds, and of course falls with the bonds.
In regard to the question of constructive ratification by the payment of a part of the coupons by the county, our opinion is, that it cannot be so, and can only be construed as an unadvised act by the Commissioners, and subject the payees to an action by the county for money had and received.
It is admitted that bonds issued by a county or municipality without legislative authority to issue are void, even in the hands of an innocent holder for value. But the decisions of the Supreme Court of the United States establish that no irregularity or even fraud of the agents of a county will invalidate such bonds in the hands of bona fide
(223) holder for value, short of want of power to issue. Grand Chute v. Winnegar, 15 Wallace, 355; Dillon on Corporation, sec. 420;Marsh v. Fallen Co., 10 Wallace, 676.
That the defendant corporation was fully authorized by the result of the election to issue bonds to the R. R. Co., is not denied. The power to issue admitted, the power to ratify is a necessary sequence, as the greater includes the less, and such ratification is equivalent to express authority (subsequent sanction same in effect as assent at time.) Best, C. J., inMcLean v. Dunn et al., 4 Bing. 722; Dillon Municipal Corp. sec. 385, note to page 380-381; Comm'rs v. Warren, 15 N.Y. (1 Smith) 576; Storey on Agency, secs. 242-251-253.
The subsequent ratification by a principal of the previous unauthorized act of an agent of one assuming to be such is, in all respects, equivalent to original authority. Storey on Agency, secs. 242, 251, 25; McLean v.Dunn, 4 Bing. 422; Ward v. Williams, 26 Ill. 477; Greenfield Bank v.Craft, 4 Allen, 447; Howe v. Keeler, 27 Conn. 538; 15 N.Y. (1 Smith) 557,supra; Bigelow v. Dennison, 23 Vt. 564. *Page 189 
Corporations, municipal and others are subject in their acts and courses of conduct, like individuals, to same presumptions and implications of law; the rights, duties and liabilities of corporations assimilate to those of natural persons. Dillon on Municipal Corp., secs. 132, 152, 385, 489; Collier's Law of Municipal Corp., vol. 2, page 417; Supervisors v. Schenck, 5 Wallace, 772; Lynde County, 16 Wallace, 15; Delafield v. Illinois, 26Wend. (N.Y.) 191, pp. 226-227) and 2 Hill 161 et seq.; Milledge v. BostonIron Co., 5 Cushing 258, top pages 175-179.
Acts of ratification on part of defendant corporation:
1. Receipt of the stock and exercising rights of stockholder by proxy in meetings of R. R. Co., but not until after issue of the bonds in question. Pendleton Co. v. Amy, 13 Wallace, 297; Dillon on Corporations, secs. 385, 386, 387 and notes. (224)
2. Levy of tax to pay interest coupons of these bonds after act of Legislative ratification.
3. Payment of interest coupons with knowledge of facts set forth in the act of the Legislature, above referred to, showing the manner in which the bonds were issued. Campbell v. City of Kenosha, 5 Wallace, 195; Supervisorv. Schenck, 5 Wallace, 722; Clark ex'r. v. Van Ramsdale, 9 Cranch, 153;Wilkins v. Hollingsworth, 6 Wheaton, 271; Epis. Soc. v. Epis. Ch., I Pick, 372; Delafield v. State of Illinois, 26 Wend. 192.
4. Acquiesence [Acquiescence] for two or three years after knowledge of the existence of these bonds and their circulation upon the market, as the bonds of the county, and without giving any notice to the public of the alleged defects in their issue. Supervisor v. Schenck, 5 Wallace 772 (782);Prescott v. Fluyn, 9 Brig. 19; Delafield v. Illinois, supra; Storey on Sales, sec. 77 and note 1.
By subscription to the Railroad Company a legal debt and a valid and subsisting obligation was made against defendant. It was the duty of its officers to issue the bonds. The presumption is, that the bonds issued were a compliance with that duty as defendants does not aver that they are under any obligations to make the issue of bonds now.
But it is contended that the acts of ratification were without knowledge of the irregularities attending the issue. To this we reply:
1. If, as it is contended by the defendants, it was the buyer's duty to examine the records and look to the authority of the pretended officers (page 7 of the brief) when it would have been seen that no one was authorized to issue the bonds. How much more binding is it on the defendants, whose records these were and of which they were the *Page 190 
peculiar custodians, and yet with this alleged want of authority staring them in the face, they perform the acts of ratification admitted.
2. The acts of 1869-'70, chap. 65, p. 114, under which the Board of Commissioners of defendants levied the taxes to pay the (225) coupons that were paid, set out fully the irregularities on the issue of these bonds, and this was surely notice to defendants.
Equitable estoppel to defendants:
1. It appears from case agreed that defendants accepted the benefit of this contract after the legislative ratification, claimed the stock and exercised all the rights of stockholder in the meetings of the Railroad Company, for several years, and in fact until stock was worthless. This was the benefit or consideration of these bonds, and it is settled "that if a person not duly authorized make a contract on behalf of a corporation and the corporation take and hold the benefit of it, it is estopped from denying the agent's authority." Epis. Soc. v. Epis. Ch. 1 Pick 372; Parson's on Contract, vol. 1. 139; Storey on Agency, sec. 239, et seq; SanFrancisco Gas Co. v. San Francisco, 9 Cal. 452; Backman v. Charleston,42 N.H. 125 and 19 Jon. 60.
2. That the defendant corporation were aware of the existence and circulation in the market of these bonds, as their bonds, shortly after their issue, it does not appear that they gave any notice of the doubts as to their validity. No steps were taken to prevent the circulation as the securities of the county. They were silent with knowledge that these securities were circulating in the market as their own, and now when plaintiff and others are bona fide holders for value and innocent parties must suffer, unless they are bound by their silence, as in fairness, they ought to have spoken as when one sees a counterfeit note, signed with his name, sold to another without declaring the forgery. He will be estopped to deny its genuiness. Bigelow on Estopped, 497; Society of Savery v. NewLondon, 29 Conn. 174.
3. A course of conduct (such as has been that of defendant corporation) which would lead a reasonable man to infer the existence of certain facts if those have formed the basis of his action, constitute a ground of estoppel. "Passive acquiescence equally with active interference estops." "He who is silent when he ought to speak, (226) shan't speak afterwards." Parsons on Contracts, 2 vol. 795, 798 and 799; Never v. Belknap, 21 Johns, 573; Corrust v. Abington, 4 H, and M. 549.
Can the Legislature ratify and validate bonds issued in the name of a county by one not properly authorized, but in payment of a valid pre-existing debt? *Page 191 
1. County corporations are but agencies of the sovereign, the State power; they are local depositors of certain powers to be exercised for the good of the State. They are public corporations in the strictest sense of the term "public." All the powers conferred upon the counties by the Constitution, such as the superintendence of the public roads and bridges, the power to purchase and hold real estate for the specific purposes of building thereon jails, court houses, school houses, and in fact all these other powers are most intimately connected with the general State government, whereas other municipal corporations as cities and towns have generally conferred upon them powers of enacting ordinances that relate exclusively to these local and peculiar interests. See Dillon on Municipal corporations, sec. 39. So that whatever authorities tend to establish in the Legislature an unlimited control over the affairs of cities and towns, apply with even more force to establish that authority and control over counties.
2. Darlington v. Mayor, 31 N.Y. 164. In this case Chief Justice Denio
asserts in the broadest terms that all corporate powers of a city are public and under the control of the Legislature — that its property is under its control and within the provisions of the Constitution protecting private property, and asserts that the Legislature may compel a county to submit to arbitration claims as to which a private corporation would be entitled to a trial by jury.
In the case of Philadelphia v. Field, 58 Penn. sec. 320, it was decided that it is competent for the Legislature to direct a municipal corporation to build a bridge over a navigable water course within its limits, or the State may appoint agents of its own to build it and empower them to create a loan to pay for the structure payable by the corporation. See Dillon on Corporations, sec. 48. (227)
The fact that a claim against a municipal or public corporation is not such a one as the law recognizes as of legal obligation, has been decided to form no constitutional objection to the validity of a law imposing a tax and directing its payment. Dillon on Municipal Corporations, sec. 44.Guilford v. The Supervisors, 13 N.Y., (3 Kerr) 143.
This case holds the following positions:
1. That the Legislature has power to levy a tax upon the taxable property of a town and to appropriate the same to the payment of a claim made by an individual against the town.
2. That it is not a valid objection to the exercise of such a power that the claim to satisfy which the law is levied is not recoverable by action against the town.
3. That is does not alter the case that the claim has been rejected *Page 192 
by the voters of the town when submitted to them at a town meeting under an act of the Legislature authorizing such submission and declaring that their decision should be final and conclusive.
The United States Supreme Court has affirmed this last case arguendo in the case of United States v. Railroad, decided December Term, 1872. Also Supreme Court of California in the case of Blanding v. Burr, 13 Colo. 343.
When bonds recited that they were issued by virtue of a certain act of the Legislature which act was in fact unconstitutional, but there existed at the time an act which was constitutional and which authorized their issue, it was held that supposing that the bonds at their outset created no legal liability as against the County, yet the Legislature by simply recognizing them in subsequent enactments thereby impliedly
ratified and validated the bonds. Campbell v. Kenosha County, 5 Wallace, 194, Mr. Justice Davis delivering the opinion of the Court and speaking of this subsequent act says: "This is not in terms a creative act, but it has that effect by fair implication. It is not (228) doubted the Legislature could by a direct act of confirmation legalize the issue of this scrip, not withstanding the submission of the question to the vote of the people was under the wrong law.
Legislature may validate prior subscription of city to stock of a railroad company. Bridgeport v. R. R. 15 Conn. 475; S. P. Winn v. Macon,21 Ga. 275.
The Legislature may ratify and therefore make binding an unauthorized municipal subscription to the stock of an incorporated theatre company.Municipality v. Theatre Company, 2 Rob. (La.) 209.
In the case of Sedberry v. Commissioners, 66 N.C. 486, the Legislature prescribed the mode in which the county should pay an existing debt, viz: by bonds, and interdicted the county from paying the said debt by taxation. It is true that the act in terms "authorizes" the county to issue the bonds, but it has always been held that such language shall be construed to mean "shall issue," and in our case the Court puts its decision upon the ground that the Commissioners were compellable by mandamus to issue the bonds. It follows then, that the Legislature may compel a county to recognize as valid, bonds issued in payment of an existing indebtedness, though the same were not legally binding by reason of a defect of authority in the party assuming to issue them. Nor can we distinguish between the power to order the issuing of bonds of precisely the same tenor as those in Court in payment of the debt, and the power to order the recognition of those already issued for precisely the same purpose. *Page 193 
In Thomas v. Leland, 24 Winder, 67, certain citizens of Utica had given their bond in aid of a canal, and it was held competent for the Legislature, without consulting the city, to impose a tax upon the citizens and property to pay this subscription. See Cooley on Constitutional Limitation, page 231 and note 1, and cases there cited.
As to power of Legislature see Mills v. Williams,33 N.C. 558.
Dillon in his treatise on Municipal Corporations, vol. 1, p. 159, thus states his opinion upon all the cases: If there is no special limitation in the Constitution and the debt is one to be incurred in the discharge of a public duty which it is proper for the Legislature to impose upon the municipality, it can constitute no objection to the validity of the act that the debt or liability is to be created without its consent. Thus, in the absence of constitutional restrictions, it has been decided and the decision is doubtless correct, that it is competent for the Legislature to direct a municipal corporation to build a bridge over a navigable water course within its limits, or the State may appoint agents of its own to build it and empower them to create a loan to pay for the structure, payable by the corporation. Again in sec. 44, p. 61, he says: "The cases upon this subject when carefully examined, probably go no further than to assert the doctrine that it is competent for the Legislature to compel municipal corporations to recognize and pay debts not binding in law, and which, for technical reasons, could not be enforced in equity, but which, nevertheless, are just and equitable in their character and invoke a moral obligation."
Do the facts in our case bring it within the legislative power asserted in the cases cited and in the opinion of Mr. Dillon.
1. It is agreed that the County of McDowell complied with all the statutory requisites in making the subscription. This according to all the decisions created a debt as against the County.
2. The mode provided by the Legislature by which the county should pay for the stock to be subscribed was by issuing bonds, and the county might have been compelled by mandamus to issue the bonds.
3d. The county was and is in the enjoyment and possession of the stock the consideration of the bonds issued.
4. The county has the benefit of a railroad constructed by means of the proceeds of these very bonds.
In our case thus presented we have something more than an (230) equitable debt resting upon a sound foundation. We have a legal debt and a subsisting legal obligation upon the county to issue these very bonds. In Sedberry v. Commissioners, we suppose the Legislature directed bonds to issue in payment of a pre-existing debt; in *Page 194 
ours it ratifies and validates bonds which the county was required by law to issue, but which have been issued for her by an unauthorized hand.
As to Constitutional restrictions, it is decided by this Court that none of the restrictions upon the taxing power in the Constitution apply to existing debts. R. R. v. Holden, 63 N.C. 410; Pegram v. Commissioners,64 N.C. 557.
Bonds void for want of power to issue may be validated by the Legislature. Dillon on Mun. Corp., p. 510, sec. 418, note 1 (on page 511);Seenes v. Franklin Co., 48 Mo., 167; Carpenter v. Inhabitants of Lathrop, Mo. Supr. Ct., 1873.
Legislature may ratify void act where parties could not do so. Wilkensonv. Leland, 2 Peters, 627.
Without allowing ourselves to be confused by the multitude of cases cited on both sides of the question, and taking a common sense view of it, we are satisfied that the decision of his Honor in the Court below is in accordance with law.
A mere statement of the case would seem to be sufficient to justify this conclusion. By the act of 1857, the Justices of the Court of Pleas and Quarter Sessions for the county of McDowell, are empowered to take stock in the Western North Carolina Railroad Company, (which passes through the county,) provided a majority of the voters of the county be given in favor of a subscription for some specific amount. At an election duly held a subscription of $50,000 was authorized, and in pursuance thereof the Justices, by their chairman, William (231) Murphy, subscribed for $50,000 of stock.
No order was made in regard to the issuing of the bonds required to pay the county subscription; and that matter was left "for further directions" until the Company organized and began operations. So far all is regular. The county is the owner of $50,000 of stock and owes that sum to the Company, to be discharged by county bonds, which it was the duty of the Justices to issue.
By the change of our system, the Court of Pleas and Quarter Sessions is abolished and the government of the county is vested in Commissioners. Very soon after this change, Mr. Brown, who was the chairman of the Court of Pleas and Quarter Sessions at the time of the change, executed the bonds in controversy and affixed the seal of the county, and the bonds were countersigned by A. M. Finley, the Clerk of the Court, These bonds were delivered to the President of the Company, and accepted by him in discharge of the county subscription. By the action of Murphy, chairman, the county became the owner of the stock, the *Page 195 
only question left open was the mode and manner of signing the county bonds.
Brown, chairman, and Finley, clerk, execute the bonds in the name of the county and affix the seal of the county. The bonds are accepted by the Company, in payment of "the McDowell county subscription."
Assume that these bonds were of no force, for the reason that the Justices of the Court of Pleas and Quarter Sessions had omitted to make an order, that their chairman execute bonds to be countersigned by the clerk, which bonds it was the duty of the Justices to cause to be executed; and that by reason of such omission of duty, Thompson and Finley had no authority to execute the bonds, we have the question of ratification.
1st. Were these bonds a subject of ratification?
On the argument much was said about the distinction between "voidable" and "void," and the position was taken by the counsel for the defendant that these bonds, being void, could not be ratified. According to the cases, a void estate cannot be confirmed or (232) ratified (the two words being used in the same sense) for the plain reason, that there is nothing to be confirmed or ratified. For instance, a tenant for life makes a lease for years. The remainderman or reversioner may confirm the term during the continuance of the life estate, but after the termination of the life estate, the term cannot be confirmed, for it is void, and there is no estate to be confirmed; so, if a lease for years be made, to be void, on non-payment of rent, after forfeiture, it cannot be confirmed, for there is no estate to be confirmed. See Bac. Abrid., Leases and Terms for Years. To avoid this consequence, conveyancers instead of drafting the lease, so as to make it void on nonpayment of rent, adopted the form, "in case the rent is not paid," c., the lessor may enter and avoid the term, thus giving him the right to waive the forfeiture and let the term continue, upon compensation being made.
But this learning has no application to our case, for here we have certain papers, purporting to be county bonds, and there is a thing inexistence, although it be of no force or legal effect, unless it be confirmed or ratified, so as to give to it force and legal effect. We can see no principle upon which that may not be done. A wife, having no separate estate, without the assent of her husband, buys a carriage and pair of horses on his credit. The contract is void, that is, it has no force or legal effect, but it is a subject for confirmation. If the husband allows his wife to use the carriage and horses there is an implied ratification, and he is bound to pay the price agreed on, because he recognizes the action of the wife as agent for him. *Page 196 
So A sells a tract of land owned by B, receives the purchase money, executes a deed in the name of B, and signs the name of B "by A hisattorney," This deed is void, in one sense of the word, that is, it has no force or legal effect, but still it is a thing existent and if B elects to ratify the sale and executes a deed ratifying the action of A in as full and ample a manner as if he had empowered him before the date of the sale to sell and convey the land; can any reason be (233) suggested why this deed being registered, does not ratify the deed executed by A in as full and ample a manner as if there had been a power of attorney previously executed? No objection to the effect of a deed of ratification arises to us, and we are of opinion that the deed executed by A, as the agent of B, would take effect under the maxim, omnis ratihabitio retrotrahitur et mandato priori aequiparatur, every ratification relates back and equals a covenant. The principle is, he who can command may ratify.
So, had the Justices, or the Commissioners who succeeded them, caused a resolution to be entered upon their journal to the effect that the action of Brown and Finley in respect to the county bonds, was ratified, so as to make the bonds valid binding upon the county, the resolution would have taken effect, and indeed, it would have amounted to an amendment, nunc protunc, the doing of that afterwards which ought to have been done before, for as the county had made the subscription and become owner of the stock, it was the duty of the county authorities, to have the bonds issued in payment.
Whether the fact that the county authorities represented this stock at several meetings of the stockholders, and levied taxes one or two years to pay the interest on the bonds has the effect of an implied ratification is a question into which it is not necessary for us to enter. We will merely remark, a ratification must be in a manner as solemn as that required for the command, and we will further remark, there can be no doubt that the county is bound to pay for its stock, if these bonds are held to be void the holders can, in the name of the Railroad Company, have an action ofmandamus, to compel payment of the county subscription. The fund to be divided among the bondholders. Cui bono? Are not the county authorities fighting for nothing? The debt of the county has to be paid.
2. Waiving the question of an implied ratification of these bonds by the county authorities, we put our decision upon the effect of the statute of March 1st, 1870. That act in so many words, ratifies the county bonds executed by Brown, and the only remaining (234) question is as to the power of the General Assembly to make such ratification. *Page 197 
3. The power of the General Assembly is denied, upon the ground that the ratification was a judicial, and not a legislative act; it was for thecounty to decide whether these bonds were valid or not.
The General Assembly, by the statute referred to, does not undertake todecide that these bonds are valid, but it does undertake to give validity to those bonds by aiding the omission of the Justices in respect to the order, that Brown, chairman, and Finley, clerk, execute the bonds, and for this purpose adds to, and amends the act of 1859, by enacting "after the vote is taken, and the stock is subscribed," John L. Brown and A. M. Finley be authorized to execute bonds for the amount, and affix the seal of the county, and the bonds so executed shall be valid." Clearly, the General Assembly had power to make this "command" in the act of 1859. Why did it not have power in 1870 to amend the act of 1859, by expressly naming the parties who were to act as agents of the county in executing the bonds, whereby to satisfy and give effect to the county bonds? This is legislation
made necessary, to supply an omission on the part of the Justices to make an entry, that their chairman, Brown, and the clerk, Finley, should execute the bonds for the county. In passing this act nunc pro tunc, the General Assembly ratify what ought to have been done in carrying out the provisions of the act of 1859, but it does neither more or less than it had power to have done in 1859, and what it is presumed it would have done, had this objection to the manner of the execution of the bonds been anticipated. For the execution of the bonds, in payment of the county subscription, was a plain duty imposed upon the Justices of the county of McDowell. Campbell v.Kenosha, 5 Wallace, 194, and the cases cited under the head of "Retroactive Statutes."
No error.
PER CURIAM. Judgment affirmed.
Tatom v. White, 95 N.C. 459; Lowe v. Harris, 112 N.C. 492. *Page 198