JOHN H. KING *v.* C. L. HUNTER *et al*, as the Board of Commissioners of Lincoln County.

The act of the Legislature of February 2d, 1871, authorizing the Board of Commissioners to appoint a Tax Collector for the County of Lincoln, is unconstitutional.

An office is property. There is here a contract between the Sheriff and the State that he will discharge the duties of the office, and it cannot be abrogated or impaired except by the consent of both parties.

*Hoke* v. *Henderson*, 3 Dev. 12: *Cotton* v. *Ellis*, 7 Jones 545, cited and approved.

Civil action tried before *Logan, J.*, at Spring Term, 1871, of LINCOLN Superior Court.

The facts are that the plaintiff was duly elected Sheriff of Lincoln County in 1868, and gave the bonds as required by

law.  In 1869, he likewise renewed his bonds.  In 1870, he offered to renew his bonds as required, but the defendants who· are the Commissioners of said County, refused to accept said bonds, for the reason that the plaintiff's term as Sheriff had expired.  The bonds given by the plaintiff in 1868 and 1869, and those tendered in 1870, embraced the collecting and accounting for the County, Poor and Public Taxes during the tenure of office of the plaintiff.

In March, 1871, the defendants appointed one W. R Edwards to collect and account for the County, Poor and Public Taxes for the year 1871, by virtue of an Act of the Legislature of Feb. 2d, 1871.

The prayer of the plaintiff is,

1st.  To compel the defendants to accept his bonds, for the faithful collection and accounting for the County, Poor and Public Taxes, as required by law ;

2d.  To require the defendants to place the tax lists for 1871,. in his hands, as Sheriff, for collection ;

3d.  That the defendants be enjoined and restrained from placing the tax lists in the hands of W. R. Edwards, &c.

Upon the coming in the answer of the defendants, his Honor adjudged that the defendants should accept the bonds of the plaintiff, for the collection and accounting for the County, Poor and Public Taxes for 1871, and that they be required to· place in his hands for collection, the tax lists for 1871.

Defendants excepted ; judgment and appeal.

*Bynum*, for plaintiff.

1. No man shall be deprived of his property, but by the law of the land.  Const.  Art. 1, sec. 17.  · An office is the right to· exercise a public or private employment, and receive the fees and emoluments belonging thereto.  It is property.  2 Bl. 36.  The Sheriff shall annually collect the public and county taxes, and account for the same.  Rev. Code, ch. 28, secs. 1. 2.  And this

KING *v.* HUNTER *et al.*

has been the general law from the creation of the office in 1738. Ire. Revisal, ch. 3, Laws of 1738, p. 57. The office of Sheriff is not a common law office in this State, but was created by the statute of 1738, in substitution of Provost Marshal, then abolished, and one of the duties annexed to the creation of the office, was the collection of the taxes, and it has ever since been incident thereto. And so when the new Constitution established the office of Sheriff, Art. 4, sec. 30, it also prescribed the incident duties of the office, by continuing the laws then in force, making it the revenue office, Art. IV, sec. 24.

It is therefore as competent for the Legislature to disannex the duties of serving legal process from the office, as that of collecting revenue, yet if both are done, the office is destroyed by taking away all its functions ; the collection of revenue being as much a function of the office, as the service of a Court precept.

It is seen that the act in question, does not create a new office with new duties, but a new office by taking away the regular duties and emoluments of an old and constitutional office, during the term of the office. 1 Kent. Com., 413, 423, and cases there cited. *Hoke* v. *Henderson,* 4 Dev. 1 ; *Rutherford* v. *Green's heirs,* 2 Wheat. 196.

2. The act impairs the obligation of contracts. The Sheriff's term began in September, 1868, and ends September, 1872. When elected by the general law, it was his duty to collect taxes, and he contracted to do it during his term, and gave his bonds therefor, which cover the term, and are durable during the entire term. His bonds were accepted and the contract was complete. Rev. Code, ch. 105, sec. 18 ; ch. 28, sec. 2, and 17. The Sheriff cannot refuse to perform this duty, nor can the State refuse him the compensation agreed on. *Hoke* v. *Henderson,* 4 Dev. 1 ; 1 Kent. 413, 423.

3. The Act is in conflict with the revenue laws and public policy and convenience. It intervenes not only during the term of office, but in the middle of a fiscal year.

The case shows that the tax collector was elected the 27th of

March, 1871, and claims to file his bond and collect the taxes of 1871.

There are two fiscal years, one for the State, and the other for the County. Prior to the last Revenue Act, the fiscal year of the State, was from October to October. The last Act extends it to December 1, 1871, and hereafter from December to December. So the fiscal year for 1871, is from October, 1870, to December 1, 1871.

By this last Revenue Act, the County fiscal year is from December 1, 1870, to January 8, 1872, and thence from January to January. So whether we take one or both fiscal years, this new office cuts them into, producing financial confusion, detrimental to the public welfare; for the duty of collecting tax is continuous, throughout the fiscal year, and the Sheriff had, as was his duty, collected a large part of the taxes of 1871, before the election of tax collector, as merchants' taxes and other unlisted taxes. Revenue Act 1870, sec. 35, ch. 225, p. 287; also, Revenue Act, 1871, secs. 34, 38.

4. The election of tax collector is illegal and void. By Act of 1868, Special Session, p. 22, sec. 5, the Board of Commissioners are required to hold their regular meetings the 1st Monday of September and February of each year, and special meetings at the call of the Clerk. By the laws of 1868–'69, ch. 259, sec. 1, the law in regard to special meetings is repealed and they are required to be held on the 1st Monday in every month. The election was held the 27th of March, 1871, when no meeting could be held by law, and when its acts are as utterly void, as those of the Superior Court, held at a time not prescribed and impliedly forbidden by law.

5. The Act is contrary to the theory and principles of the Constitution. It not only creates a new office out of an old and constitutional one, but vests the election of the incumbent not in the people, as every other known officer is, but in five men, and for a term, (one year,) not known to the Constitution or

laws. The people, under the Constitution, have the right to choose all their officers, except in cases of vacancy or default.

6. The construction placed upon the Act by the defendants is erroneous. If two constructions can be put upon a legislative act, one of which is certainly consistent with the Constitution and laws, and the other construction conflicts with the general law of the land and statutes which are not repealed by the act, and involves doubtful constitutional power, the rule is · that the former must prevail.

The Act in question fixes no time when the powers conferred on the Board of Commissioners may be exercised; they are therefore to be exercised, if at all, when they clearly may be, lawfully, which in the present case, cannot be before the expiration of the Sheriff's term of office.

7. This is a private act and to be construed strictly and differently from a public act. *Drake* v. *Drake*, 4 Dev. 110.

8. Void for uncertainty. *State* v. *Woodside*, 9 Ire. 496.

*Hoke*, for defendants.

By common law the duties of Sheriff were, 1st, judicial; 2d, keeper of the King's peace; 3d, ministerial, as Executive officer of the Superior Courts; 4th, as the King's Bailiff.

In the last "He must seize to the King's use all lands devolved to the crown by attainder or escheat; must levy all fines and forfeitures; must seize and keep all waifs, wrecks, estrays and the like, unless granted to some subject; must also collect the King's *rents* within the bailiwick, if commanded by process from the Exchequer. 1st Black. Com. 343 and 344.

The collection of taxes did not pertain to the office at common law, but has by acts of the General Assembly been superadded, with bonds for the discharge of the duties thus imposed. *Crumpler* v. *Governor*, 1 Dev. 57 and 60.

From time to time many new duties have been imposed upon the Sheriff, and the power to do so repeatedly recognized

.and never disputed in our Courts. Collection of town taxes. *State* v. *Bradshaw*, 10 Ire. 232. School taxes. *Lindsay* v. *Dozier*, Bus. 276.

Taking runaway negroes into jail and safely keeping them. Laying list of retailers before grand jury. Taxes of Counties for Railroad purposes.

Tax Collectors appointed before the war. See acts 1858–'59, ch. 279, p. 378.

Article IV of Constitution, sec. 30 provides, " In each County a Sheriff and Coroner shall be elected, and shall hold their offices for two years. In each township there shall be a Constable elected in like manner, who shall hold his office for two years."

By sec. 23, same article, it is provided, " The General Assembly shall prescribe and regulate the fees, salaries and emoluments of all officers provided for in this article; but the *salaries of the Judges* shall not be diminished during their continuance in office."

The Legislature may increase or reduce the salaries of all such officers as are not protected by the Constitution during their term of office, but it cannot deprive them of their whole salary; for it is presumed offices are accepted with reference to a general power of which the Legislature has not divested .itself, and in this particular the appointment to and acceptance ..of an office with a salary, differs from an ordinary contract, the terms of which cannot be altered without mutual consent. A statute which reduces a salary, and one which takes away the .salary altogether, stand on a different footing. *Cotton* v. *Ellis*, 7 Jones 548.

Chap. 46, sec. 10, Acts of 1868, page 66, " The Sheriff, Coroner and Register of Deeds of each County, and the Constables and Justices of the Peace of each township shall receive .as a full compensation for all services required by law such .fees as may by law be allowed to them respectively."

From the foregoing authorities it is evident that the Legis-

lature has always exercised authority to change the duties of Sheriffs, and the power has been sustained and acquiesced in.

If the plaintiff insist that the Legislature has no power to diminish his income by withdrawing his official duties and conferring them upon another, he is met by the language of the Constitution, which confines, in express language, such restriction to the salaries of the Judges. And the act of 1868 expressly notifies them that the increase or diminution of their pay is within legislative control.

For the power of the Court to interfere by injunction, see *Worth* v. *Commissioners of Fayetteville*, Winston's Law and Equity, p. 70, Dec. Term, 1864; *Patterson* v. *Hubbs*, 65 N. C. 119.

READE, J. The office of Sheriff, with well defined duties and emoluments, existed at the time of the adoption of the present Constitution. One of those duties with its emoluments, was the collection of taxes The Constitution established the office of Sheriff, and prescribed the mode of his election by the people, and his term of office, with such salary and fees and emoluments, as should be prescribed by law. The plaintiff was elected Sheriff under the Constitution, and his term has not yet expired. At the time he was elected and inducted into office, the collection of the taxes was a part of his prescribed duties; for the performance of which he gave bond and took an oath. These duties he continued to perform until April last, when, under an act of the Legislature, ratified February 2d, 1871, the County Commissioners of Lincoln County appointed a tax collector, and inducted him into office and ousted the plaintiff of that duty. The question is, had the Legislature the power to pass the act?

Nothing is better settled than that an office is property. The incumbent has the same right to it that he has to any other property. There is a contract between him and the State that he will discharge the duties of the office—and he is pledged by his bond and his oath; and that he shall have the

17

emoluments—and the State is pledged by its honor. When the contract is struck, it is as complete and binding as a contract between individuals; and it cannot be abrogated or impaired except by the consent of both parties. We do not wish to be understood as holding that there is any iron rule of construction of the details of the contract; on the contrary, there must be some flexibility to suit the public convenience and the convenience of the officer, such as would be implied from the nature of the contract, and such as circumstances make necessary, ex. gr. that if it happened that the emoluments are so inadeqate that for them the officer cannot afford to serve the public, they may be increased, or if they be so extravagant as to be burdensome to the public, they may be diminished. But this must be done in good faith and in fair dealing, and with no view to evade, or directly or indirectly to impair the substance of the contract. Nothing needs to be better guarded than contracts with public officers; for although it is not to be supposed that the Legislature will be influenced by any but pure motives, yet as officers, and officers are of necessity connected with political parties, and are, insensibly, the objects of favor or prejudice, it is wise to protect the public against the former and the officer against the latter.

It is well known that the commissions for collecting taxes is an important, and, in many counties, the principal part of the emoluments of the office of Sheriff. Lincoln is a small county, and probably one-half of the Sheriff's emoluments are from taxes. There is no allegation that the emoluments are large to the oppression of the public. If they were so, the evil might have been remedied without a violation of the contract, by a general law reducing the fees of Sheriffs. But even in that way it is at least questionable whether the Legislature could have deprived him of *all* commissions for the collection of taxes—certainly not unless the emoluments were extravagant and burdensome, and then the reduction, or deprivation, must have been for that reason. But here, there is no such excuse.

The Legislature without explanation and without apparent necessity, and, therefore, in contemplation of law, wantonly, takes the duties and emoluments from the Sheriff, and creates a new officer, and gives them to him! The error is so palpable, that, but for the respect due to the Legislature, whose act we are reviewing, and must sustain unless *plainly* unconstitutional, we should think it unnecessary to encumber the case with authorities.

"The King may grant the office of Sheriff *durante bene placeto*, and although he may determine the office at his pleasure, yet he cannot determine it for part, &c. Nor can he abridge the Sheriff of anything incident or appurtenant to his office." *Bacon's Abr.* 7 *Office p.* 202.

So in the State of New York, there was the office of "Clerk of the City and County of New York," who was also "Clerk of the Court of Common Pleas." The officer was elective by the people. The Legislature undertook to divide the office, and create a separate office of "Clerk of the Court." The Court appointed the Clerk and inducted him into office, just as the Commissioners of Lincoln did in this case. The Supreme Court of New York decided that the Legislature had no power to do it, saying, "In effect this statute divides the office of 'Clerk of the City and County of New York' into two parts; and as to the largest share in point of duty and emoluments, takes the choice of the officer from the electors of the county, and gives the appointment to the Court. If this can be rightfully done, I do not see any security for the residue of the office. The Legislature may take that also and give the appointment of the officer to some Court, or to the Governor and Senate; and thus the constitutional provision for a choice by the electors would be completely nullified." *Warner* v. *The People*, 2 Denio, 272.

The same case was carried to the Court for the Correction of Errors, and was elaborately argued by eminent counsel, and well considered by the Court, and the decision of the Supreme

Court was affirmed; the Chancellor saying, "But where the Legislature, as in this case, assumes the power to take from a constitutional officer the substance of the office itself, and to transfer it to another, who is to be appointed in a different manner, and to hold the office by a different tenure than that which was provided for by the Constitution, it is not a legitimate exercise of the right to regulate the duties or emoluments of the office but an infringement upon the constitutional mode of appointment."

It would seem, therefore, that the division of the duties and emoluments of the Sheriff of Lincoln is liable not only to the objection that impairs the obligation of the contract with the Sheriff, and deprives him of his property and gives it to another, but to the more serious objection that it breaks faith with the people, by taking from them the right to choose the officer who may go into every man's house, and distrain his property, or otherwise collect the taxes. Probably there is no right of which the people are more jealous, and for the infringement of which they will hold the Legislature and the Courts to a more rigid accountability. If the people may be deprived of the election of this officer; and if his duties and emoluments may be transferred to an appointee of an irresponsible body, of what other similar right may they not be deprived? With as much propriety every other office in the State may be cut up, and those who have been put into the office by the people may be starved out, and irresponsible persons put in. The people have secured to themselves the election of Governor, because they would have the important interests of the State committed to an agent of their own choice. With as much propriety the duties with which he has been entrusted might be transferred to others, irresponsible to the people; and so with every other officer in the State. We need hardly refer to the familiar cases of *Hoke* v. *Henderson* and *Cotton* v. *Ellis* in our own Reports.

It has been considered how far an office or officer may be

taxed. And it is considered as settled that the State has no power to tax an officer of the United States, or *vice versa;* because "the power to tax includes the power to destroy;" as was said by Chief Justice Marshall in *McCulloch* v. *State of Maryland,* 4 Wheaton, p. 207. And if a State were allowed to tax a United States officer one dollar, it might tax him to the full amount of his salary, and thus "arrest all the measures of the Government." And so the United States cannot tax a State officer for the same reason.

It is not doubted, however, that the State may tax any other property, the object being revenue and not the destruction of the office. But the people have been so jealous of even this power, that it is provided in the Constitution, that the salaries of the most important officers shall not be altered during their term of office, and this is understood to exempt their salaries from taxation, because to tax is to diminish or, it may be, to destroy.

The act of the Legislature under consideration, providing for a tax collector, is not general but is confined to the County of Lincoln. No necessity for the change is recited in the act, and none appears in the case. The 3d section provides "that he shall have all the powers vested in the Sheriff for that purpose," &c. And the 4th section provides "that he shall have the same emoluments," &c. So that it is not left to inference but appears affirmatively that the act is purely arbitrary, and takes the property of one man and gives it to another. Private and particular legislation having only local application is never received with the favor of general legislation. The Legislature of course has the same honest purpose in both, but private or local legislation is generally conceived and contrived by some interested party, and not always from the purest motives.

There is no error. This will be certified to the end that other and further proceedings may be had according to law.

PER CURIAM.                                    Judgment affirmed.