L. D. LOWE et al. v. JAMES HARRIS.

*Contract Relating to Land—Statute of Frauds—Uncertain or Vague Description—Retroactive Legislation—Parol Evidence.*

1. Where, in an action to recover the possession of land, defendant claimed the same upon an alleged contract embraced in a writing as follows: "Wilkesboro, N. C., April 19th, 1880.—James Harris has paid me twenty dollars on his land; owes me six more on it.": *Held*, that the receipt, as a contract to convey land, is void for uncertainty and ineffectual to pass any interest whatever in the land to the defendant, and it was improper to admit parol testimony at the trial for the purpose of explaining what land was referred to therein.

2. While the Legislature has power to modify or repeal the whole of the statute of frauds, in so far as it relates to future contracts for the sale of land, it has no authority to give the repealing statute a retroactive operation so as to affect or destroy rights already vested.

3. An act of the Legislature changing the rules of evidence cannot be construed as operating retrospectively so as to affect existing rights.

4. The power of the Legislature to enact *remedial* statutes giving effect to contracts relating to land extends only to those cases where those claiming under them had, previous to the enactment, an equitable right, and not to cases where the policy of the law, or the express provision of a statute, prevented the transmission of any interest whatever by the agreement or instrument relied on.

5. There is a general presumption against the retroactive operation of statutes where it would impair vested rights; therefore the Act of 1891 (chapter 465), providing that "in all actions for the possession of or title to any real estate parol testimony may be introduced to identify the land sued for and fit it to the description contained in the paper-writing offered as evidence of title or right of possession," cannot be held to operate retrospectively so as to allow parol testimony to locate land referred to and ambiguously described in a contract made before the passage of such act of the Legislature. (SHEPHERD, C. J., concurs, but further holds that the act has not the effect of changing the existing law in reference to contracts or deeds relating to land, the word "description" as used in the act meaning a "description" which has a legal susceptibility of being aided by testimony so as to identify the land, and not a "description" which, in law, is no *description* whatever).

BURWELL, J., dissents *arguendo*, in which CLARK, J., concurs.

ACTION to recover land, tried at Fall Term, 1892, of WILKES Superior Court.

The defendant, after denying allegations in complaint in reference to wrongful possession, said:

1. That on the —— of ——, 1880, the defendant purchased the lands described in the complaint of plaintiff from Mrs. A. P. Calloway, the mother of the *feme* plaintiff, and under said contract of purchase went on said land and cleared the same, and erected houses on the same, and has paid Mrs. A. P. Calloway the purchase-money,

except about six dollars, as will appear by the following *memoranda* in the handwriting of Mrs. A. P. Calloway, and signed by her, as follows:

"WILKESBORO, N. C., April 19, 1880.

"James Harris has paid me twenty dollars on his land; owes me six more on it.        A. P. CALLOWAY."

And has ever been ready and willing to pay the balance of the purchase-money on receipt of his deed in fee-simple, which Mrs. A. P. Calloway told him she would make him when he purchased said land; and relying on the honesty of Mrs. Calloway, and being himself an ignorant colored man, he failed to have his title made perfect, as he now learns he should have done.

2. That the said A. P. Calloway, knowing full well that she had only a life estate in said land, and the *feme* plaintiff also knowing that A. P. Calloway had only a life estate in said land, wrongfully encouraged the defendant to make payments on said land, and when, after making several payments, he went to Mrs. Calloway for his deed, she would invariably put him off; and when he told her that he did not want to pay for land and put improvements thereon without having a deed for the same, both Mrs. Calloway and Hattie H. Lowe, the *feme* plaintiff, told him to have no fears, but to go ahead and pay for his land, and put all the improvements he wanted, and just as soon as he paid for the land he should have his deed, both assuring him that he should have a good deed, and that Mrs. Calloway and all her children (the *feme* plaintiff being one of them) would sign said deed, and with these assurances he went on and made other payments, and has put buildings and improvements on said land to the amount of $300.

3. That after all the assurances to defendant by Mrs. A. P. Calloway·and Hattie H. Lowe, the *feme* plaintiff, the said *feme* plaintiff bought a sixty-eight acre tract of land from Mrs. A. P. Calloway, and from her other sisters, knowing full well that defendant had already purchased a part of said tract from Mrs. A. P. Calloway, and that defendant had made payments and improvements on the land upon the assurance of Mrs. Calloway and the *feme* plaintiff that he should have a good title.

4. That at the time the defendant purchased said land the·price to be paid by him was the full value of said land, and no complaint was ever made or threats by *feme* plaintiff that he should not have said lands, till a railroad reached the town of Wilkesboro, and this land lying near said town the *feme* plaintiff, moved by the insatiate greed of her husband, L. D. Lowe, saw that by the innocent credulity of this defendant she might be able to rob the defendant out of his home, and reap the fruits of the *feme* plaintiff's own wrong.

The plaintiffs replied:

"1. That they deny allegation first of the said new matter, and they say if any such contract was made as alleged in said new matter in said allegation the same was void, for that no contract in writing for said land or sufficiently describing said land signed by Mrs. A. P. Calloway was ever made with said Harris, or any written *memoranda* of any contract for any land.

2. They admit that A. P. Calloway only had a life estate in said land, and they deny the balance of said allegation.

3. They deny allegation third, except they admit that the *feme* plaintiff bought a sixty-eight acre tract from Mrs. A. P. Calloway and from her other sisters as therein alleged, and that said sixty-eight acre tract embraces the land

in controversy, but they allege that the deed and conveyance taken from Mrs. A. P. Calloway was only for a life estate therein, the said A. P. Calloway only having a life estate therein.

4. They deny allegation fourth of the complaint, and replying to that part of said allegation which charges that the *feme* plaintiff, moved by the insatiate greed of her husband, L. D. Lowe, saw that she might be able to rob the defendant of his home, the *feme* plaintiff says that "every such allegation is unjust to her credulity, manifests a lamentable want of gallantry and courtesy to a lady which usually guides the strong arm of the draughtsman of pleadings in courts of justice, and she respectfully and kindly submits that such harsh and cruel accusations are not in keeping with that elegant, lofty and polished sentiment which is the crowning glory of the American law!"

His Honor, without objection, submitted six issues, directing the jury that, if they found the third in the affirmative, they need not answer the others.

The third issue was as follows:

"Is the land which the defendant is now in possession of, and which is sued for by the plaintiff in this action, the identical land which is referred to in the paper-writing set up in the answer and alleged to have been executed to defendant by Mrs. Calloway?"

The plaintiff then introduced J. F. Somers, who, on cross-examination, testified that Mrs. Calloway went with him upon the land in question before selling the same to James Harris, and that afterwards he surveyed the land at the instance of Mrs. Calloway; that the defendant has lived on this land for twelve or fifteen years; that at the time James Harris purchased the land the price paid by him, to-wit, $25, was a fair price for the same.

The defendant then introduced the paper-writing referred to in his answer.

The plaintiff objected to it on the ground that it was too indefinite in describing any land. His Honor overruled the objection and admitted the evidence, and the plaintiff excepted.

The defendant testified that the paper-writing introduced was executed to him by Mrs. A. P. Calloway, and that he never owned any land in his life except the land bought from Mrs. A. P. Calloway, and that the land in controversy was the land for which the paper-writing was given. He testified further that he had made various payments on the land, but had never gotten any deed for the same; that the *feme* plaintiff had promised to sign his deed, but never did; that when he purchased the land he thought he was going to get a good title.

There was much other testimony introduced showing that the land in controversy was the land referred to in the paper-writing, and as to the assurance of *feme* plaintiff to make a conveyance.

It was admitted that when Mrs. A. P. Calloway sold to James Harris she had only a life estate in said land, and that the children of Mrs. Calloway, the *feme* plaintiff, being one of them, had the fee after the life estate ended. It was also admitted that the *feme* plaintiff had purchased the life estate of her mother in a sixty-eight acre tract, of which the land in controversy was a part, prior to the bringing of this action, and also had purchased the interest of her sisters. It was further admitted that Mrs. A. P. Calloway, the life tenant, died since the bringing of this action.

The *feme* plaintiff then testified, on cross-examination, that she purchased the life estate from her mother, Mrs. A. P. Calloway, knowing that James Harris was in possession under a contract of purchase from her mother, and

that she knew of payments defendant made to the mother on said land.

The jury having found that the land referred to in the paper-writing was the identical land described in the complaint, there was a judgment for the defendant, and plaintiffs appealed.

*Mr. L. D. Lowe*, for plaintiffs (appellants).
*Mr. W. W. Barber*, for defendant.

AVERY, J.: The extreme limit of liberality in sanctioning the admission of parol proof to explain ambiguous descriptions in deeds and contracts for the sale and conveyance of land was attained in *Carson* v. *Ray*, 7 Jones, 609, where the premises were described as "my house and lot in the town of Jefferson," and the plaintiff was permitted to show that the grantor had but one house and lot within the boundaries of that place. In discussing that case and distinguising it from *Murdoch* v. *Anderson*, 4 Jones' Eq., 77, Judge BATTLE delivering the opinion of the Court, took the ground that in connection with the designation of the town in which the lot was located, given in the deeds passed upon in both of them (in the one case Hillsboro and in the other Jefferson), the description had been made more definite by use of the personal pronoun "my," so as to open the way for proof that the grantor had but one lot in that village, which he meant to refer to as the place of his residence.

The contract under consideration is in the following words: "Wilkesboro, N. C., April 19, 1880.—James Harris has paid me twenty dollars on his land; owes me six more on it."

As the location of the land is not fixed directly or inferentially within the State of North Carolina, or within the

United States, the receipt is still more vague than either of the instruments discussed by Judge BATTLE, and it may be assumed that no one will venture to maintain that it was not void for uncertainty before the passage of the Act of 1891. Indeed the case of *Fortescue* v. *Crawford*, 105 N. C., 29, is authority for holding that no right, title or interest in any land passed to the defendant upon its signature or delivery to him, since the receipt relied on by the defendant was almost identical with that under consideration.

The policy of the law in existence before that statute was enacted was to remove as far as possible the temptation to perjury by permitting parol proof to be used in aid of a defective description only where it pointed by its terms to some extrinsic evidence for explanation of its ambiguous meaning. *Allen* v. *Chambers*, 4 Ired. Eq., 125; *Massey* v. *Belisle*, 2 Ired., 170; *Leigh* v. *Crump*, 1 Ired. Eq., 299. The principle stated is fully conceded in *Perry* v. *Scott, supra,* where, though the distinction drawn by Judge BATTLE between cases where the personal pronoun constitutes or does not form a part of the description is disapproved, the necessity for indicating the locality by some means is clearly recognized. The receipt being utterly ineffectual to transfer any interest whatever to the defendant in 1880, when it was delivered to him, both the legal and equitable estate in the land remained vested in Mrs. A. P. Calloway for life with remainder in fee in her children.

The Legislature unquestionably had and has the power to modify or repeal the whole of the statute of frauds, in so far as it applies to future contracts for the sale of land; but its authority to give the repealing statute a retroactive operation is as certainly restricted by the fundamental rule that no law will be allowed to so operate as to disturb or destroy rights already vested. Did the Legislature intend that the Act of 1891, ch. 465, should be construed to operate

retrospectively, and if so, is the law in so far as it relates to pre-existing rights unconstitutional?

No law which divests property out of one person and vests it in another for his own private purposes, without the consent of the owner, has ever been held a constitutional exercise of legislative power in any State of the Union. Cooley Const. Lim., star p. 165; *Wilkinson* v. *Ward*, 2 Peters, 658; *Satterlee* v. *Matthewson, Ibid.*, 380; *Hoke* v. *Henderson*, 4 Dev., 1; *Waller* v. *Stetson*, 2 Mass., 148; *Colder* v. *Bull*, 3 Dallas, 394; *Bosh* v. *Klack*, 7 Johns., 507; Const. of U. S., Art. I, sec. 10; Const. of N. C., Art. I, sec. 17; *Butler* v. *Penn*, 4 How., 416; *Fletcher* v. *Peck*, 6 Cranch 137; *Stanmire* v. *Taylor*, 3 Jones, 207; *Ibid.*, 214; *King* v. *Commissioners*, 65 N. C., 603; *Wesson* v. *Johnson, Ibid.*, 603; 1 Kent. Com., 455; *Stanmire* v. *Powell*, 13 Ired., 312.

Even in England, where there are no written constitutions, a statute will not commonly be construed to divest vested rights, and when giving it a retrospective effect may lead to that result it is allowed to operate prospectively only. *Moore* v. *Phillips*, 7 M. & W., 536; *Cranch* v. *Jeffries*, 4 Bur., 2462. The radical difference between the rules of construction prevailing in the two countries grows out of the fact that the Courts in England are forced to concede the supreme and unlimited power of Parliament, while in the United States Legislatures are bound to observe and the Courts to enforce the restrictions imposed upon all the co-ordinate branches of the government by the Federal and State Constitutions. Philosophical writers upon law generally in all countries, however, deny the power of the Legislature to pass statutes that impair a right acquired under the law in force at the time of its enactment, and insist that the right to repeal existing laws does not carry with it the power to take away property, the title to which

vested under and is protected by them. But the Legislature of North Carolina is restrained by Article I, sec. 10, of the Constitution of the United States, and Article I, sec. 17, of the Constitution of North Carolina, not only from passing any law that will divest title to land out of one person and vest it in another (except where it is taken for public purposes after giving just compensation to the owner), but from enforcing any statute which would enable one person to evade or avoid the binding force of his contracts with another, whether executed or executory. *Robinson* v. *Barfield,* 2 Murph., 391; *Butler* v. *Penn, supra; Railroad* v. *Nesbit,* 10 Howard, 395; *Fletcher* v. *Peck, supra; Terrell* v. *Taylor,* 9 Cranch, 43; *Call* v. *Woodard,* 4 Wheat., 519.

The first case in which the constitutional inhibition against the passage of a law impairing the obligation of a contract came before the Supreme Court of the United States for construction was *Fletcher* v. *Peck, supra.* The Legislature of the State of Georgia had, by an act passed in 1795, granted land to Grinn and others, and the defendant Peck was a purchaser for a valuable consideration, holding through several mesne conveyances under the patentees named in the act. In 1796 the same body enacted a statute repealing the Act of 1795 and declaring it and all grants issued under its provisions null and void, on the ground that its passage was procured by undue influence and corruption. The Court held that the Act of 1796 could not be construed to divest the title out of the defendant Peck and invest it in the State, and rested its rulings not only upon the clause of the Constitution mentioned, but also upon more general principles arising out of the organic law of all of the States. The Court said upon this subject: "To the Legislature all legislative power is granted; but the question whether the Act of 1796, trans-

ferring the property of an individual to the public, be in the nature of a legislative power, is well worthy of serious reflection." This was the earliest intimation that if the prohibition had been omitted in the Federal Constitution the Legislature of the State would have had no power to revoke its own grant, without the consent of innocent persons holding under it. It has since been held in the appellate Courts of the States generally that a law which provides for the transfer of the interest of an individual in land to another person or to the State, except for public purposes and upon just compensation, is void because it is in conflict with the provisions of the organic law, that the three co-ordinate branches of the government should be kept forever separate and distinct, and that no person should be deprived of his property but by the law of the land. *Stanmire* v. *Taylor, Hoke* v. *Henderson, King* v. *Commissioners* and *Wesson* v. *Johnson, supra.* It is true that the Legislature may alter the remedy if its efficacy is not impaired, or take it away if one that is not calculated to diminish the value of the debt be provided in place of it. *Long* v. *Walker*, 105 N. C., 90, and the authorities there cited. The rules of evidence may be changed by legislative enactment too; but if by giving a retrospective operation to a statute passed for that purpose it would divest any right of property that had already accrued, it should be construed to operate prospectively only, if at all. Sedgwick on Statute and Constitutional Law, page 195.

Kent (1 Com., 455) says: "A retrospective statute affecting and changing vested rights is very generally considered in this country as founded on unconstitutional principles and consequently inoperative and void."

After a legacy had been bequeathed to a married woman and when under the law then in force the husband had a right to it, subject to certain contingencies, the Legislature

of New York passed an act declaring that the real and personal property of any female then married should be her sole and separate property. The appellate Court said: "the application of this statute to this case would be a violation of the Constitution of this State, which declares that no person shall be deprived of life, liberty or property without due process of law." *Wistervell* v. *Gregg,* 12 N. Y., 202. While acknowledging the right of the law-making power to pass remedial laws and especially statutes of limitation operating prospectively, the Supreme Court of Pennsylvania said, "It would be contrary to the spirit of legislation in Pennsylvania, from the date of its charter to the statute in question, to deprive a man of his land instantaneously under the pretense of limiting the period within which he should bring his action." *Eaken* v. *Raub,* 12 Serg. & R., 340.

In *Greenough* v. *Greenough,* 11 Pa. St., 494, Chief Justice GIBSON discussed a statute which changed the rules of evidence by providing that every last will and testament, made and not finally adjudicated prior to the passage of the act, to which the testator had made his mark or directed his name to be written, should be deemed valid and admitted to probate on proof of the fact. The learned Judge said that the law was "destitute of retroactive force, not only because it was an act of judicial power, but because it contravened the constitutional provision that no man should 'be deprived of life, liberty or property except by the law of the land.'" Our statute is one providing for a different mode of establishing a deed or contract which may infuse life into a contract void at the option of the party to be charged, just as that act proposed to make operative a void will.

In this State it has been settled that the Legislature is not empowered to pass an act that provides for depriving a per-

son of his property in an unexpired term of office even by a general law or amendment to the Constitution prescribing a different mode of election, or by creating a new office and turning over the emoluments and perquisites belonging to the officer during the residue of his term to the incumbent of the newly created place, because an officer has a vested right in his office for the term prescribed by law.   *Hoke* v. *Henderson* and *King* v. *Commissioners, supra.*

In *Trustees* v. *Foy,* 1 Murphy, 58, this Court held that where escheated land had vested in the trustees of the University the Legislature was restrained by the clause of the Constitution, Art. I, sec. 17, which declared that no person ought to be deprived of property but by the law of the land, from passing an act to take away from that institution the escheated land donated to it by a former statute.

In *Sutton* v. *Askew,* 66 N. C., 172, and in *Wesson* v. *Johnson, Ibid.,* 189, it was held that where the land was acquired by the husband, and the marriage was contracted before the passage of the Act of 1868, restoring to married women their common law right of dower, that statute would not be construed to operate retroactively, because to give such effect to it would interfere with the vested right of the husband to alien without the consent of the wife, and to pass an estate in the land free from encumbrance of an inchoate dower right.   So that this Court has, in these cases also, distinctly held that no law can be so construed as to take property from one person, except for public use, and after making just compensation, and give it to another, or to encumber the property of one person by giving another such right or interest in it as will interfere with his pre-existing power to alien.   *Hughes* v. *Hodges,* 102 N. C., 236.

In *Leak* v. *Gay,* 107 N. C., 468, it was said that "when the effect of a law is to divest the vested right of property,

except for the use of the public, and then only after providing for payment of its value, it will be declared void."

In the case of *Stanmire* v. *Taylor*, 3 Jones, 207, it appeared that the Legislature had passed an act purporting to give validity to a certain grant theretofore issued, but which had been declared void by the Court in *Stanmire* v. *Powell*, 13 Ired., 312. The act was passed by the General Assembly in October, 1852 (after this Court in June previous had declared the grant relied on by the plaintiff in the then pending suit to be void), and provided that the grant should be thereby validated and declared "good and effectual to pass all the right of the State in and to the said land, any law to the contrary notwithstanding." The defendant held under a subsequent valid grant from the State. Chief Justice NASH, delivering the opinion of the Court, said : " If the Act of 1852 (declaring plaintiff's grant valid) was intended to give life to the void grant, under which the plaintiff claims the premises, by giving a construction to it, the act was a judicial one, which it was not in the power of the Legislature to pronounce. If it be considered purely a legislative grant to the lessor of the plaintiff, then it violates the contract it made with the defendant Taylor, and is void."

It is contended, however, that the Legislature has the power to pass remedial acts, and especially is authorized to so alter the rules of evidence as to afford relief to litigants. But the limit to such authority is transcended, said Judge SEAWELL, when a law is enacted which in its enforcement has the effect of depriving " one individual of his property without his consent and without compensation, and transferring it to another." *Robinson* v. *Barfield, supra*. The principle governing this controversy was as clearly stated by Judge DANIEL in an opinion delivered in the same case, when he said that " the transfer of property from one indi-

vidual, who is the owner, to another individual is a judicial and not a legislative act. When the Legislature presumes to touch private property for any other than public purposes, and then only in case of necessity and upon rendering full compensation, it will behoove the judiciary to check its eccentric course by refusing to give any effect to such acts."

We think that where a deed or contract purporting to convey passes an equitable interest in land it is not upon its face void, and the Legislature has the power to enact remedial laws regulating the probate and registration of such instruments, though the incidental effect may be to admit to registration a deed or contract, which could not previously be proven, and to enable the person claiming under it to use it in establishing his title. It has been suggested, however, that the Legislature has the power to give efficacy retrospectively to contracts like that under consideration, which have been so often declared void for uncertainty, because it has also been held that they were void at the election of the person to be bound thereby (just as in the case where the agreement is merely verbal), and that being voidable the Legislature had the power to impart vitality to them. But we do not think that the line of demarcation, which indicates the limit of legislative authority, can be made to depend upon the question whether the agreement is void or voidable. The deed of a married woman is void; that of an infant void at his option on arriving at maturity, and the leading authorities concur in sustaining the general proposition that the contracts of infants are voidable only; yet it will not be contended that a statute allowing all conveyances theretofore made by infants to be registered and declaring them effectual to pass the land described in them would be held constitutional so as to divest title out of such infants without their consent.

How can such a statute be distinguished from one which operates to divest title out of a party against his will because he has signed a paper or entered into a verbal agreement which the law declares, just as in the case of an infant, has passed no interest, legal or equitable, in the land which purports to be the subject of the agreement?

An unregistered deed, executed with all of the formalities prescribed by law, conveys an equity which would descend to the heirs of the grantee. A law which gives efficacy to the probate of such a deed merely provides for transferring the legal estate by certain proof to the person who had previously been the real owner in equity. It transfers the legal estate to such equitable owner as did the statute of uses, but it does not disturb the vested beneficial right. If in that case the deed were ineffectual upon its face to pass any interest, legal or equitable, no remedial statute could impart efficacy to it. *Robinson* v. *Barfield, supra.* It would seem therefore more accurate to declare that the power to enact remedial statutes giving effect to contracts for the sale and conveyances of land extends only to those cases where the grantee or other person deriving benefit from their enforcement had, previous to the passage of the law, an equitable right, and not to cases where the policy of the law or the express provision of a statute had prevented the transmission of any interest whatever by the instrument or agreement relied on.

Contracts are made with a view to the legislative authority to provide for proving in the readiest manner that the parties actually entered into them, but the parties are not deemed to have acted in reasonable contemplation of such an alteration in the law as to change its policy and thereby transfer both the legal and equitable estate in land without the consent of the owner. As the case involves an important principle, it may not be improper to cite numer-

ous additional authorities from the appellate Courts of many of the States in which an effort has been made to fix and determine the limit to the authority to pass remedial laws.

In Alter's Appeal, 67 Pa. St., 341, the Supreme Court of Pennsylvania declared it incompetent for the Legislature to empower the Courts to correct a mistake in a testator's will which rendered it inoperative, and thereby deprive his heirs at law of property that had descended to them. In another case it was held by the Court of Nevada that where a testator left no heirs the Legislature had power to waive the right of the State to take his property as an escheat by validating a will in favor of his devisees, but could not have divested the title of his heirs at law if any had been known. Estate of Stickworth, 7 Nevada, 229. In *Hasbranch* v. *Milwaukee*, 13 Wis., 37, that eminent jurist, Chief Justice DIXON, in discussing an act to validate a contract void when executed, for want of power in the city authorities of Milwaukee, said: "A contract void for want of capacity in one or both of the contracting parties to enter into it is as no contract. And to admit that the Legislature, of its own choice and against the wishes of either or both of the contracting parties, can give it life and vigor, is to admit that it is within the scope of legislative authority to divest settled rights of property, and to take the property of one individual or corporation and transfer it to another." It should be noted that the deed in that case was void at the election of the city. See also, *Mills* v. *Charlton*, 29 Wis., 413. Where a conveyance is void for want of power in the grantor to convey the estate that it purports to pass, it cannot be validated by statute. *Shruk* v. *Brown*, 61 Pa. St., 327. It has been held that a lease void under the statute cannot be validated by the receipt of rent. Sedgwick & Wait T. T. to R. P., 379, and notes. When the subsequent ratification by the contracting party cannot give validity to

an agreement to rent, because it is void under this same statute of frauds, it is difficult to understand how the Legislature, despite the protest of the parties to a deed and their privies, can by altering the rules of evidence restore it to life. In *Underwood* v. *Tilly*, 10 S. & R., the Supreme Court of Pennsylvania said "that the retrospective operation of laws would be supported when they impair no contract or disturb no vested right, but only vary remedies, cure defects in proceedings, otherwise fair, which do not vary existing obligations contrary to their situation, when entered into and when prosecuted." The Supreme Court of New Hampshire held that the Legislature had no power, as against parties not assenting, to validate a fraudulent sale of corporate property. *Railroad* v. *Railroad*, 50 N. H., 50.

To declare by statute in terms that Mrs. Calloway intended to convey when she actually aliened nothing would be a legislative usurpation of judicial power, and to change the general remedy applicable to pre-existing contracts so as to pass an estate now, when no equitable right vested in Harris at the time of the execution of the paper, even if it be accomplished by modifying the rules of evidence, would be to disturb a vested right by transferring the land without compensation to the owner from whom it is taken after it had been aliened to a purchaser for value. *Norman* v. *Hoist*, 5 W. & S. (Pa.), 17. There is a general presumption against the retroactive operation of statutes, and they will, in cases like that at bar, where it will impair vested rights to apply them to past transactions, be construed to affect rights accruing after their enactment. Endlich, secs. 271 to 274; *Richardson* v. *Cook*, 3 Vt., 599.

Where deeds are executed by virtue of a judicial decree, and are voidable only, not void, by reason of some irregularity growing out of a failure to follow the mode of pro-

cedure prescribed by law in the conduct of the action or proceeding, it is clearly competent to cure such defects by remedial legislation, and where the action or proceeding has been instituted and prosecuted in good faith, it is not only eminently just, but it serves the important end of preserving the public confidence in the stability of judgments of the Courts to resort to the law-making power for such relief. Hence the curative acts, affecting irregularities in special proceedings, have been upheld by the Courts, as they cannot be collaterally impeached, and are voidable only in the absence of such remedial acts at the instance of a party to them, not void. *Edmundson* v. *Moore*, 99 N. C., 1; *Ward* v. *Lowndes*, 96 N. C., 367; *Bell* v. *King*, 70 N. C., 330; *Herring* v. *Outlaw*, *Ibid.*, 334. In such cases the curative statute divests no vested right because the theory of the decisions upon the subject has always been that an estate vests under the decree, subject, however, to be avoided in the absence of legislation on notice of a party to the proceeding, or to be validated and made conclusive on the parties by a proper statute. *Moore* v. *Gidney*, 75 N. C., 34. Such proceedings differ widely from contracts of infants, or such as are not enforceable under the statute of frauds. In the one instance a *prima facie* title passes, though it is defeasible; in the other the contract is unlawful in its incipiency, passes nothing. The one is valid until it is avoided, the other is void until it is validated. Parties are supposed to contract with reference to the power of the law-makers to withdraw the mere right to avoid, but not in contemplation of the enactment of a statute which would operate as a compulsory ratification, and divest a vested interest without the consent of him who holds it. It is like the distinction between destroying a mere right or possibility, which must have been expected when it was created, and the taking of an interest in land without compensation. *Bass* v. *Naviga-*

*tion Co.*, 111 N. C., 439.  Thus the distinction between this line of cases and those in which the right of recovery depends upon giving effect to a deed or contract, that has once been on its face absolutely void, or voidable at the election of the party to be bound, because executed contrary to the prohibition of a statute, or not in the only mode declared by it to be sufficient, or in violation of a rule declared by public policy.  In *Condry* v. *Cheshire*, 88 N. C., 375, it was held that a void judgment could be attacked without any direct proceeding to vacate it.  *Doyle* v. *Brown*, 72 N. C., 393; *Stallings* v. *Gulley*, 3 Jones, 344.

The statutes that provide for supplying lost records are also within the scope of legislative authority, because they only give to certain persons the means of setting up and establishing valid titles, and the parties who actually aliened and passed title to them cannot complain, because all right has already been divested out of them, and they are presumed to have conveyed with reference to the legislative power to provide for restoring the evidence of what had been actually accomplished, not simply attempted in the face of a statute declaring the attempt in advance ineffectual.  *Adle* v. *Sherwood*, 3 Wharton (Pa.), 484.

As we have already stated, after a deed has been executed, if it be valid upon its face, the grantee takes an equitable estate under it, till by force of registration (which is our modern substitute for livery of seizin) the legal estate vests in him.  He being the owner in equity, it is no interference with vested rights to provide by law a more convenient mode of proving the execution or to ratify a probate that is informal, or was taken by an officer not empowered to do so, but who mistook his power.  *Freeman* v. *Person*, 106 N. C., 251; *White* v. *Connelly*, 105 N. C., 65; *Young* v. *Jackson*, 92 N. C., 144; *Tatom* v. *White*, 95 N. C., 453.  The probate is but an *ex-parte* ascertainment, by authority of

law, that the instrument registered is authentic (*Young* v. *Jackson, supra*), and does not conclude the parties to it as to its legal effect. It is competent for the Legislature to cure a defective probate where the instrument has already been recorded, as it is to prescribe the mode of proving in future, and parties contract with a view to the possible, if not probable, exercise of this power. The Legislature is empowered, unquestionably, to pass a law extending the statute of limitations or making the time shorter, if a reasonable time is given for the commencement of an action before the bar takes effect. *Strickland* v. *Draughan,* 91 N. C., 103. The principle announced in this case is not inconsistent with the doctrine (laid down in *Eaken* v. *Raub, supra*) that a man cannot be deprived of his land "instantaneously under the pretense of limiting the period in which he should bring his action." Neither can he be instantaneously robbed of his property, the possession of which he is about to recover in the Courts, under the guise of modifying the rules of evidence. So the principle decided in *Alexander* v. *Commissioners of McDowell,* 70 N. C., 208, has no bearing upon this case. Where one holds what purports to be a contract made on behalf of the State by an agent, but which is in reality void for want of authority in the agent to bind the State, the Legislature has the power to assume the obligation, just as it could have provided for payment of the claim if no agreement had been entered into. "Municipal corporations are mere agencies of the State through which the sovereign acts in matters of social concern." *Bass* v. *Navigation Co., supra;* Southerland on Stat. Cons., sec. 488. The right to limit involves the power to dispense with limitations. *Ibid.* But the Legislature cannot take the property of one man and give it to another, though an attempt may be made to transfer it by a judicial proceeding, as by a Sheriff's sale. *Ibid.,* sec. 484, and note.

Where a party prays an appeal to an appellate Court the judgment of the Court below is thereby vacated, subject to the condition that he shall perfect his appeal either under any law existing when he appeals, or that may be enacted before his cause is heard in the appellate Court, and a curative act which gives him a status in the higher Court is considered to have been in contemplation of the parties at all times and divests no title but simply provides the means of fairly ascertaining the rights of the litigants. *Walker* v. *Scott*, 104 N. C., 481. Judge COOLEY says (Const. Lim., 371), in treating of irregularities that may be cured by statute: "And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is competent to make the same immaterial by subsequent law." But where the defect which the act seeks to remedy affects the jurisdiction of the Court, it is in violation of fundamental principles to give it a retrospective effect. *Ibid.* The learned Judge must not be understood as maintaining that the Legislature has the power to pass any retroactive remedial law which it would have been within the scope of its authority to have enacted for future operation. Under such a principle no man's property would be secure against the judicial authority of the law-making department of the government.

If the receipt was void for uncertainty as a contract, and the defendant acquired no legal or equitable right that could then be enforced, the General Assembly had no more authority, even under the guise of changing the rule of evidence or providing a new remedy to transfer the life estate of Mrs. A. P. Calloway and the remainder in fee of her daughters to the defendant, by a *general* than by a *special* act, naming the parties and setting forth their rela-

tion to each other. Such special acts have been declared by this Court to be in contravention of the organic law, not only as attempts to divest vested individual rights, but as infringements on the part of the Legislature upon the power of the judicial branch of the government. *Stanmire* v. *Taylor, supra.*

We conclude, therefore, that the Legislature did not intend that the statute should apply to pre-existing contracts, but only to those entered into after its passage.

In permitting the defendant to explain what land was referred to we think there was error, for which a new trial should be granted.                          New Trial.

Shepherd, C. J., concurring: Under the view I have taken it is unnecessary to determine whether the statute in question should be construed as prospective only in its operation, as I am very clearly of the opinion that it did not have the effect of changing the existing law in reference to descriptions contained in deeds or contracts for the conveyance or sale of land. The statute provides that "in all actions for the possession of or title to any real estate, parol testimony may be introduced to identify the land sued for, and fit it to the *description* contained in the paper-writing offered as evidence of title or right of possession, and if the jury is satisfied that the land in question is the identical land intended to be conveyed, * * * then the said paper-writing shall be deemed and taken to be sufficient in law to pass such title * * * as it purports to pass," etc. Section 1, ch. 465, Acts 1891.

Whatever may have been the intention of the Legislature, it is, I think, very evident that the foregoing language does not change, in the slightest degree, the existing law upon the subject to which it refers. It is but a plain and concise exposition of the rules of the common law, and,

if the Legislature intended to abrogate these rules, in whole or in part, it should have expressed such intention in the clearest and most unmistakable manner.  Statutes which "innovate upon the common law rules of evidence," or which "provide for proceedings unknown to or contrary to the common law," are construed strictly (and) "the Courts cannot properly give force to them beyond what is expressed by their words, or is necessarily implied from what is expressed."  Southerland Stat. Cons., sec. 400.

The same author also declares it to be a cardinal principle of judicial interpretation, that "where a statute uses a word which is well known and has a definite sense at common law, or in the written law, without defining it, it will be restricted to that sense unless it appears that it was not so intended."  And he further states that "rules of interpretation and construction are derived from the common law, and, since that law constitutes the foundation and primarily the body and soul of our jurisprudence, every statutory enactment is construed with reference to its cognate principles."  Sections 253–289.

Keeping in mind these well-settled principles, let us inquire whether there is anything in the statute which sustains the defendant's contention that it was the purpose of the Legislature that the word "description" as therein employed should be so construed as to practically repeal the statute of frauds, and thus destroy in a great measure the stability of titles to the landed property of the State. We should be loath to attribute to the law-makers a purpose to place our State in a position of such exceptional and unenviable prominence, and I am quite sure that their real object in passing the statute may be explained upon other and more reasonable grounds to which I shall hereafter refer.

The statute provides that parol testimony shall be admissible for the purpose of fitting the land to the description contained in the deed, and the question is whether the word "description" is to be taken in its ordinary and legal signification—that is, a description which has a legal susceptibility of being aided by testimony so as to identify the land, or whether it means a description which in law is no description whatever and is sometimes called an "insufficient description." I am really unable to conceive of any principle upon which the latter proposition can be supported unless it be that the Legislature must have intended something different from the common law and that it is our duty to discover it and, by a process known as judicial legislation, insert it into the statute. This involves not merely the difficulty of departing from the generally accepted meaning of the terms of a statute, but also an absolute contradiction of such terms, resulting in a complete change, in many instances, in the rights of property.

In other words, instead of reading the statute—"that parol testimony may be received for the purpose of fitting the land to such a description as is recognized as legally sufficient"—we are to substitute the words "such a description as is so vague and indefinite as to have been heretofore held to be legally insufficient," or one which, in the language of Judge PEARSON in a case similar to this (*Murdoch* v. *Anderson*, 4 Jones' Eq., 77), is "no description" at all. I cannot see how a word in a statute having such a plain legal signification can, in the absence of something in the context requiring it, be stricken out and other words of an entirely different signification inserted in its place. The failure of the Legislature to accomplish what it is argued it attempted to do, affords no warrant to the Court to supply the supposed omission. Even if the language were not altogether free from ambiguity, we should hesitate

to place upon it the construction insisted upon, for it is a universally accepted rule that "a construction which must necessarily occasion great public and private mischief must never be preferred to a construction which will occasion neither, or not in so great a degree, unless the terms of the instrument *absolutely require such preference.*" Southerland, *supra,* 323.

If the statute means that testimony may be introduced to the jury in all cases where the description has heretofore been held void by reason of vagueness, it would be exceedingly difficult for any Court to determine what is a *sufficient* "insufficient description" which should be submitted to the jury. It would seem from the construction insisted upon that if there is a mere semblance of a description, however indefinite it may be, its legal sufficiency is to be determined by the jury; for if they find that the parties *intended* to convey a certain piece of land the description shall, by reason of such finding, be *deemed in law* sufficient to pass the title. It is impossible to estimate the confusion which would result from such a substantial reversal of the functions of the Court and the jury. I suppose that any *attempt* at a description would be sufficient to put the jury in full control of the matter without any interference on the part of the Court. Thus, if I have ten stores on Fayetteville street, in the city of Raleigh, and convey to A "a store on Fayetteville street, in the city of Raleigh," this will be sufficient to go to the jury, and they may determine which of the ten stores was intended to be conveyed. This, of course, would be an abrogation of the statute of frauds. Could the Legislature have intended this? But to go still further. If I should afterwards sell to B one of the stores, specifically describing it, what is to prevent A from identifying it as the one sold to him under his vague and imperfect description? Under the statute there can be no equita-

ble principle asserted for the protection of B, as it contains no saving in favor of third persons, but expressly provides that in *all* cases the evidence shall be received, and if the property can be identified by the jury, then the description shall be *deemed in law sufficient.* If the description is thus made sufficient by the finding of the jury it must be sufficient for all purposes.

That this construction is not the true one is entirely clear by a reference to the second section of the act, which provides "that no deed　*　*　*　shall be declared void for vagueness in the description by reason of the use of the word 'adjoining' instead of the words 'bounded by,'" etc. The provision was intended to meet a suggestion that there was a distinction between the words "bounded by" and "adjoining," as affecting the legal sufficiency of a description, and was rendered unnecessary by a subsequent declaration of the Court in *Perry* v. *Scott,* 109 N. C., 374. It recognizes that there is such a thing as a *description* which may be declared void by the Court for "vagueness," and enacts that in certain instances it shall not be so declared void. Now, it is asked with absolute confidence, why was it necessary to provide for the cases mentioned in this section, if what had been suggested to be an "insufficient description" for "vagueness" was provided for in the first section, which is the one we have under consideration?

Very clearly there would have been no necessity for such legislation if the present contract, and the similar one in *Fortescue* v. *Crawford,* 105 N. C., 29, were covered by the first section under the construction contended for. I think that it was the purpose of the Legislature to meet the suggestion referred to, and this is certainly all that was effected by the terms of the statute.

I do not impute to the Legislature a purpose to enact such a law as to produce the evils which would result from

the construction insisted upon, and I am of the opinion that the real object of the statute was such as I have indicated.

The common law, then, not having been changed in respect to this contract, and it being void under the decision in Fortescue's case, *supra*, I concur in the ruling that there should be a new trial.

BURWELL, J., dissenting: The following issue was submitted to the jury without objection on the part of the plaintiffs: "Is the land of which the defendant is now in possession, and which is sued for in this action, the identical land which is referred to in the paper-writing set up in the answer and alleged to have been executed to defendant by A. P. Calloway?"

Defendant offered this writing in evidence, and plaintiffs objected "on the ground that it was too indefinite in describing any land." His Honor overruled the objection and admitted the evidence, and the plaintiff excepted.

The writing referred to is as follows:

"WILKESBORO, N. C., April 19, 1880.

"James Harris has paid me twenty dollars on his land; owes me six more on it.          A. P. CALLOWAY."

I assume that the contention of the plaintiffs was that parol evidence was not admissible to locate the land to which the defendant alleged this receipt referred, and show that it was the same land which plaintiffs were seeking to recover of him in this action, she also claiming under A. P. Calloway. Her objection should have been to the parol testimony when it was offered. The writing was clearly admissible in evidence. Its legal effect was a matter to be determined after it was introduced.

But for the Act of 1891, ch. 465, sec. 1, the case of *Fortescue* v. *Crawford*, 105 N. C., 29, would be decisive of this controversy, for there, as here, the only words in the receipt descriptive of the land are "his land," and some other words that show that what was there styled his (the defendant's) land was, prior to the alleged sale, the land of the person signing the receipt.

The act referred to seems to have been enacted to meet and avoid the hardship of such cases as that cited above and this one now before us. Whether that legislation is wise or unwise is not for us to say. We should give to it all proper effect.

We have here a memorandum in writing which, under the law as it stood before the Act of 1891, would not have availed the defendant because it was not then permissible to show by parol evidence that the land therein designated by the vendor as "his land" was the land in controversy, and for that reason alone. The expression is very vague and indefinite, but it is a "description." In *Bread* v. *Munger*, 88 N. C., 297, "his 100 acres of land" is called an "insufficient description." In *Fortescue* v. *Crawford, supra,* (the receipt being similar to the one here under consideration), this Court said of the defendant's offer of parol testimony that he was endeavoring "to help out the insufficiency of the *description.*" If, then, there was a written memorandum available and sufficient of itself for defendant's protection in his possession when the action was begun, if the description had not been insufficient and imperfect, that imperfection and insufficiency could be remedied by the verdict of the jury founded upon the writing and parol testimony which the act had made competent "to identify the land and fit it to the description contained in the paper-writing" offered as "evidence of the right of possession."

There was no error, I think, in his Honor's allowing defendant to put the writing in evidence and the introduction of parol evidence to identify the land. The statute is, in my opinion, applicable to all actions to be tried in the courts, no matter when the contract was made. It does not contravene any provision of the Constitution, for it affects a *remedy* and not the *rights* of any citizen. "Laws which change the rules of evidence relate to the remedy only." *Tabor* v. *Ward*, 83 N. C., 291. And such laws are not unconstitutional, though retroactive. *Hinton* v. *Hinton*, Philips, 410; *Wilkerson* v. *Buchanan*, 83 N. C., 296; *Philips* v. *Cameron*, 3 Jones, 390.

The act now under discussion, if applied to this case, will disturb no vested right of Mrs. Calloway or her vendee with notice. It will merely prevent the perpetration of a *wrong* by giving to the defendant a preventive for that wrong by changing the rule of evidence so as to allow him, in defence of his possession of his home, to submit to the jury parol testimony that was not admissible when the alleged contract was made. The contract was not void, but only voidable at the option and upon the proper plea of the alleged contractor. *Laughran* v. *Giles*, 110 N. C., 423, and cases there cited. The act does not assume to make that a contract which was not one, but merely declares that the jury may determine what the contract was, and to that end may hear and consider certain parol evidence. This will disturb no vested rights nor deprive any one of what is his own. It may be that it is better for the commonwealth that a few should have the privilege of doing what all men feel to be wrong—taking from honest purchasers land sold to them by defective descriptions—than that some should be tempted to swear falsely. Of that we say nothing. All such legislation as

that under consideration involves a question of *policy* and not of *constitutional power.* Cooley Const. Lim. (6th Ed.), p. 460.

CLARK, J.: I concur in the above dissenting opinion.